DANIEL W. FULCHER v. NORWOOD NELSON.

(Filed 6 March, 1968.)

**1. Contracts § 1—**

Persons *sui generis* have a right to make any contract not contrary to law or public policy, and the court will not inquire into whether the parties acted wisely or foolishly.

**2. Contracts § 18;   Automobiles § 6—**

A provision in a contract for the sale of an automobile which allows one party to rescind within a year if "not happy with car" is properly construed to mean if not satisfied with the car.

**3. Contracts § 18—**

An agreement in which the promise of one party is conditional upon the satisfaction of the promisee is generally enforceable, since such promise is generally considered as requiring a performance which shall be satisfactory to the promisee in the exercise of an honest judgment.

**4. Same—**

Where the language of a contract is uncertain as to whether one party in case of dissatisfaction shall have an unqualified option to terminate the contract or whether such right of termination is to be based upon some reasonable ground, the contract will be construed as not reposing in the party the arbitrary or unqualified option to terminate it.

**5. Same;   Automobiles § 6—**

A provision in a contract allowing the purchaser of an automobile to "trade back" with the dealer if unhappy with the automobile will be construed to confer this right if plaintiff's election was made in good faith upon his dissatisfaction with the car.

**6. Contracts § 26—**

In the purchaser's action to rescind a contract of automobile sale under a provision allowing him to "trade back" if he is dissatisfied with the

FULCHER v.. NELSON.

car, plaintiff's testimony as to the physical condition ·of the automobile immediately after acquiring possession thereof is competent upon the question of plaintiff's good faith in electing to exercise his right of rescission.

**7. Contracts § 27;    Automobiles § 6;    Sales § 13—**

Evidence in this case is *held* sufficient to permit a jury finding that defendant automobile dealer breached a. contractual obligation to "trade back" the automobile of a purchaser upon the latter's dissatisfaction with a car purchased from ·the dealer.

**8. Contracts § 29—**

In an action for damages resulting from an automobile dealer's breach of a contractual obligation to "trade back" at any time within a year if plaintiff · is dissatisfied with the automobile purchased from the dealer, plaintiff is entitled to be placed, as near as this can be done in money, in the same position he would have occupied if the dealer's "trade back" obligation had been performed.

LAKE, J., dissenting.

HIGGINS, J., joins in· dissenting opinion.

APPEAL by defendant from *Hobgood, J.,* August 1967 Civil Session· of CARTERET.

Plaintiff instituted this action to recover ·damages for alleged breach of contract.

Admitted allegations establish that defendant on January 10, 1966, sold to plaintiff a 1961 Cadillac for $2,475.00; and that plaintiff paid $75.00 cash ·and traded in a 1961 Ford for which· he was allowed $900.00.

Plaintiff alleged it was "agreed that if the plaintiff was not satisfied with the car, he, the defendant, would trade back with the plaintiff at any time within one (1) year"; that, shortly after taking possession thereof, he discovered the Cadillac was in "very bad ·condition"; that he demanded that defendant take the Cadillac back and return to plaintiff his 1961 Ford and the $75.00-down payment; that defendant, shortly after selling the Cadillac to plaintiff, sold the Ford he had received from plaintiff; that, notwithstanding plaintiff's repeated demands, defendant failed to trade back with plaintiff as he had agreed to do; that in June, 1966, after he had paid $51.21 for repairs to the "Cadillac in an attempt to keep it running and to protect ·the defendant's interest therein," plaintiff disposed of the Cadillac in a'·trade in which he was allowed $1,175.00 for it; and that plaintiff was entitled to recover, by reason of defendant's said breach of contract, the .sum of $1,351.21, consisting of $1,300.00, to wit, the difference between what· the ·Cadillac was reasonably worth .and the

contract price at the time of the trade, plus the $51.21 plaintiff had expended for repairs.

Answering, defendant denied the allegations of plaintiff set forth in the preceding paragraph; and, by way of further answer and defense, alleged plaintiff had breached the contract (1) by refusing to deliver to defendant the title certificate to the 1961 Ford, and (2) by selling the Cadillac to a third party.

The only evidence was that offered by plaintiff, which consisted of plaintiff's testimony and exhibits.

The contract of January 10, 1966, is signed by plaintiff and defendant. Across the face thereof, immediately above defendant's (additional) signature, these handwritten words appear: "Will trade back with Daniel in 12 months if not happy with car. No lost *(sic)* to him."

The issues submitted by the court, and the jury's answers thereto, are as follows: "1. Did the defendant fail to perform his contract with the plaintiff? ANSWER: Yes. 2. Did the plaintiff breach the contract? ANSWER: No. 3. What amount is the plaintiff entitled to recover from the defendant? ANSWER: $250.00 plus the cost of court."

In accordance with said verdict, the court entered judgment that plaintiff have and recover of defendant the sum of $250.00 and that defendant be taxed with the costs. Defendant excepted and appealed.

*Nelson W. Taylor for plaintiff appellee.*

*Wheatly & Bennett for defendant appellant.*

BOBBITT, J. The gravamen of plaintiff's action is the alleged breach by defendant of his contractual obligation to "trade back" if plaintiff was "not happy with car." Although seeking to rescind, plaintiff does not base his alleged right to do so on fraud or breach of warranty. He bases it solely on the ground the contract gave him the right to "trade back," that is, to rescind.

Whether the court erred in overruling defendant's motion for nonsuit depends upon the validity of the special contract provision. Interpretation thereof is prerequisite to a determination of its validity.

"Persons *sui juris* have a right to make any contract not contrary to law or public policy." 2 Strong, North Carolina Index 2d, Contracts § 1. Whether defendant acted wisely or foolishly when he agreed to "trade back" if plaintiff was "not happy" with the Cadillac is not material. *Roberson v. Williams,* 240 N.C. 696, 700-701, 83 S.E. 2d 811, 814.

The trial judge interpreted the words, "if not happy with car,"

as used in the special provision of the contract of January 10, 1966, to mean *if not satisfied with the Cadillac.* We agree. In this connection, *satisfaction* is a synonym for *happiness.* 19 Words and Phrases, p. 59; Black's Law Dictionary, Fourth Edition, p. 846.

"It has been questioned whether an agreement in which the promise of one party is conditional on his own or the other party's satisfaction contains the elements of a contract — whether the agreement is not illusory in character because conditioned upon the whim or caprice of the party to be satisfied. Since, however, such a promise is generally considered as requiring a performance which shall be satisfactory to him in the exercise of an honest judgment, such contracts have been almost universally upheld." 5 Williston on Contracts, § 675A, pp. 189-190.

"Where, from the language of a contract, it is doubtful whether the parties intended that one party should have the unqualified option to terminate it in case of dissatisfaction or whether the intention was to give the right to terminate only in the event of dissatisfaction based upon some reasonable ground, the contract will be construed as not reposing in one of the parties the arbitrary or unqualified option to terminate it." 17 Am. Jur. 2d, Contracts § 496. This rule is applicable where the satisfaction or dissatisfaction of the purchaser relates to mechanical fitness. 5 Williston, *op cit.*, § 675B; Simpson on Contracts, Second Edition, § 149, p. 309; 1 Restatement, Contracts § 265, p. 380; *Olson v. Larson,* 48 N.D. 499, 184 N.W. 984.

Plaintiff's dissatisfaction *with the Cadillac,* as distinguished from general dissatisfaction with the terms of the trade, is the ground on which he asserts a contractual right to "trade back." We are of opinion, and so hold, the contract conferred this right to "trade back" if plaintiff's election was made in good faith on account of his dissatisfaction with the condition in which he found the Cadillac. The instructions of the trial judge were in substantial accord with this interpretation of the special contract provision.

Plaintiff's testimony tends to show that, on January 10, 1966, shortly after he obtained possession of the Cadillac, he discovered the muffler and other portions of the car were badly rusted, that the bottom of the car had been newly sprayed with an undercoating; and that he notified defendant that very day that he was "unhappy with *that* car," referring to the Cadillac. (Our italics.) Defendant objected to the admission of plaintiff's testimony as to the physical condition of the Cadillac, contending defendant made no representations or warranties as to its condition. However, this evidence was competent as bearing upon whether plaintiff's election to "trade

back" was made in good faith on account of the condition in which he found the Cadillac.

Plaintiff's testimony tends to show defendant, when advised that plaintiff was dissatisfied with the Cadillac, told plaintiff he had sold the 1961 Ford he had received as a trade-in from plaintiff, that defendant promised to bring to plaintiff another car in place of the 1961 Ford for use in making the "trade back"; and that, notwithstanding plaintiff's repeated demands that defendant "trade back" and defendant's repeated promises to do so, defendant failed to bring to plaintiff such other car or otherwise comply with his obligation to "trade back."

Defendant contends his motion for judgment of nonsuit should have been granted because it appears from plaintiff's evidence (1) that plaintiff did not deliver to defendant the title certificate for the 1961 Ford, and (2) that plaintiff disposed of the Cadillac in June, 1966, and could not *thereafter* return it to defendant. These contentions are untenable.

Plaintiff testified defendant did not call upon him for the title certificate for the 1961 Ford; and that, on January 10, 1966, defendant told plaintiff he had already sold the 1961 Ford and it was not available for return to plaintiff.

With reference to plaintiff's disposition of the Cadillac in June, 1966, plaintiff testified he did not dispose of the Cadillac until defendant had failed, notwithstanding plaintiff's repeated demands to "trade back," that is, return the money and car (or equivalent) he had received in exchange for the Cadillac. Under these circumstances, it would be of no benefit to defendant for plaintiff to store the Cadillac or, if subject to a lien, to permit the repossession and sale thereof by the holder of such lien. As indicated below, the reasonable market value of the Cadillac on January 10, 1966 (not the allowance therefor as a trade-in or its reasonable market value in June, 1966) is the significant factor in determining the amount of damages, if any, plaintiff is entitled to recover.

The evidence *in the record before us,* when considered in the light most favorable to plaintiff, was sufficient to permit a jury to find that defendant, on January 10, 1966, breached his contractual obligation to "trade back." The motion for nonsuit was properly overruled.

We emphasize the words, "in the record before us," because the evidence is silent as to matters that may be material in respect of nonsuit and are material in respect of the measure of damages.

There is no reference in the complaint or in the evidence as to how the balance of $1,500.00 (of the contract price of $2,475.00) was to be paid or as to whether it was paid. Defendant, in his further answer and defense, alleged plaintiff "financed the balance of One Thousand Five Hundred ($1,500.00) Dollars." If financed, as defendant alleged, when, by whom and under what circumstances was it financed? What amount, if any, did defendant receive as a result of such financing?

The trial judge properly instructed the jury to disregard the evidence bearing upon the cost of repairs made during the period between January 10, 1966, and June, 1966, when plaintiff had possession of and was using the Cadillac.

With reference to damages, the court instructed the jury in substance, in accordance with plaintiff's allegation and contention, that plaintiff, if entitled to recover, was entitled to recover the difference between the reasonable market value of this particular Cadillac on January 10, 1966, and the contract price of $2,475.00. Plaintiff alleged this difference was $1,300.00. (It is noteworthy that the contract price of $2,475.00 as of January 10, 1966, less the trade-in allowance of $1,175.00 in June, 1966, is $1,300.00.) The instruction as to the measure of damages was erroneous.

"(T)he general rule is that a party who is injured by breach of contract is entitled to compensation for the injury sustained and is entitled to be placed, as near as this can be done in money, in the same position he would have occupied if the contract had been performed." *Perkins v. Langdon*, 237 N.C. 159, 169, 74 S.E. 2d 634, 643; 2 Strong, North Carolina Index 2d, Contracts § 29. Where, as here, the action is to recover damages on account of defendant's breach of his contractual obligation to "trade back," that is, to rescind, plaintiff is entitled to be placed, as near as this can be done in money, in the same position he would have occupied if defendant's "trade back" obligation had been performed.

Under plaintiff's allegations and evidence, the breach by defendant of his contractual obligation to "trade back" occurred January 10, 1966. Compliance with this obligation by defendant required that he refund to plaintiff the $75.00, return to plaintiff the 1961 Ford, and return to plaintiff such additional sum, if any, as defendant may have received from plaintiff, in exchange for the Cadillac. In the event of a "trade back," the contract price is not material. A "trade back" or rescission contemplates that each party be restored as near as possible to his original status. 17 Am. Jur. 2d, Contracts § 512. Thus, if plaintiff is entitled to recover, the measure of damages would be as follows: (1) Determine what defendant received,

to wit, the cash he received plus the reasonable market value of the 1961 Ford as of January 10, 1966. (2) Determine what plaintiff received, to wit, the reasonable market value of the Cadillac as of January 10, 1966. (3) If what defendant received exceeds what plaintiff received, plaintiff is entitled to recover the amount of such difference. Plaintiff's recovery, if his damages were so determined, would carry out defendant's express agreement that plaintiff should suffer no loss.

Defendant duly excepted to the court's instructions relating to the measure of damages. Error therein, in the respect noted, entitles defendant to a new trial. On account of the incompleteness of the evidence in respect of material matters, the new trial will be *de novo* as to all issues arising on the pleadings.

New trial.

LAKE, J., dissenting: I dissent on the ground that the defendant's motion for judgment as of nonsuit should have been granted.

The alleged contract to "trade back with the plaintiff at any time within one (1) year" is so vague as to be meaningless and unenforceable. On what terms were the parties to "trade back"? Was it anticipated that the defendant, a dealer in automobiles, would retain the Ford for a year while waiting for the plaintiff to make up his mind whether he wanted to keep the Cadillac? Was it anticipated that the plaintiff might use the Cadillac for any time from a few minutes up to just short of twelve months and then return it to the defendant and get back the Ford plus the full amount paid by him to the defendant? If not, on what terms were the parties to "trade back"? The cause of action cannot be founded upon an alleged contract in which the defendant's undertaking is so uncertain that the court cannot possibly determine what would constitute full performance of it.

Furthermore, if a contract be construed as an undertaking by the defendant to restore to the plaintiff everything the plaintiff had turned over to the defendant upon the plaintiff's returning to the defendant the Cadillac, the plaintiff's evidence fails completely to show any damage sustained by the plaintiff as a result of the failure of the defendant to perform this undertaking. The record contains nothing whatever to show that the Cadillac was not worth more than the Ford plus all sums paid by the plaintiff to the defendant.

The plaintiff has not sued on the theory of breach of warranty or on the theory of fraud. His evidence does not establish a right of

action against the defendant, assuming that one is alleged in the complaint, and the motion for nonsuit should have been allowed. Such judgment would not bar the plaintiff from instituting another suit for breach of warranty or for fraud and deceit, if he be so advised.

HIGGINS, J., joins in dissenting opinion.