C. DUPREE SMITH AND WIFE, MAE L. SMITH, PLAINTIFFS V. J. MATTHEW MARTIN,
DEFENDANT AND THIRD PARTY PLAINTIFF V. ROBERT HASSELL, THIRD-PARTY
DEFENDANT

No. COA95-551

(Filed 3 December 1996)

**1. Mortgages and Deeds of Trust § 60 (NCI4th)— unauthorized cancellation of deed of trust—liability of trustee**

A trustee under a deed of trust is liable as a matter of law when he cancels the deed of trust without authorization of the principal or without determining that the underlying obligation has been satisfied. The trustee is bound to inquire whether an underlying debt has been satisfied before cancelling a deed of trust and may not rely upon the bare representations of others; furthermore, the trustee is restricted to the powers given by the deed of trust unless given the express permission to act by the principal or unless the power to act may be inferred from special facts and circumstances.

**Am Jur 2d, Mortgages § 467.**

**Duty and liability under mortgage, deed of trust, or other trust instrument of trustee to holders of obligations secured thereby. 90 ALR2d 501.**

**2. Mortgages and Deeds of Trust § 60 (NCI4th)— unauthorized cancellation of deed of trust—liability of trustee**

Defendant trustee had no power to cancel a deed of trust and is liable as a matter of law for the principals' damages flowing from the unauthorized cancellation where the deed of trust authorized its cancellation by the trustee "[i]f the grantor shall pay the note secured hereby," and defendant cancelled the deed of trust without the principals' permission and without the underlying note being paid.

**Am Jur 2d, Mortgages § 467.**

**Duty and liability under mortgage, deed of trust, or other trust instrument of trustee to holders of obligations secured thereby. 90 ALR2d 501.**

SMITH v. MARTIN

[124 N.C. App. 592 (1996)]

3. **Mortgages and Deeds of Trust § 19 (NCI4th)— subordination agreements—future loans—statement of maximum amount and interest rate**

Subordination agreements and clauses which subordinate loan obligations secured by a deed of trust to future loans must, at a minimum, include terms which state the maximum amount of the future loan and the maximum rate of interest permitted on the loan. Therefore, a deed of subordination was unenforceable as a matter of law where it failed to state the maximum amount and the interest rate of the future loan.

**Am Jur 2d, Specific Performance § 44.**

4. **Damages § 51 (NCI4th)— wrongful cancellation of deed of trust—damages—mitigation expenses—attorney fees in bankruptcy court action**

Actions taken by plaintiff deed of trust creditors to mitigate their damages resulting from defendant trustee's wrongful cancellation were reasonable as a matter of law where plaintiffs filed an adversary proceeding in the debtor's bankruptcy proceeding in which they sought secured creditor status and lien priority over another deed of trust; plaintiffs advised defendant and his insurance carrier of these mitigation efforts; and defendant stipulated in a letter and acknowledged by his inaction that plaintiffs' mitigation actions were reasonable. Therefore, plaintiffs were entitled to recover as damages for defendant's wrongful cancellation of their deed of trust the reasonable attorney fees and expenses they incurred in pursuing their action in bankruptcy court in an attempt to mitigate their damages.

**Am Jur 2d, Bankruptcy §§ 923, 1552, 2816.**

**Duty and liability under mortgage, deed of trust, or other trust instrument of trustee to holders of obligations secured thereby. 90 ALR2d 501.**

Appeal by defendant from judgment filed 4 November 1994 by Judge B. Craig Ellis in Orange County Superior Court. Heard in the Court of Appeals 20 February 1996.

This is an action to recover for the wrongful cancellation of a deed of trust. On 20 May 1988, plaintiffs C. Dupree Smith and Mae L. Smith sold a commercial property (the property) located in Hillsborough to Edward Latta. Latta paid $5,500 in cash and he and

his wife borrowed the balance of the purchase price by obtaining a $50,000 loan from Hillsborough Savings & Loan Association and a $35,000 loan from the Smiths. As collateral for the loans, Hillsborough Savings & Loan Association received a first lien on the property and the Smiths received a second lien. Both liens were properly recorded. Defendant J. Matthew Martin, a Hillsborough attorney, handled the closing and was named as trustee on both deeds of trust.

Three days after the sale, the Smiths loaned the Lattas an additional $20,000 to renovate the property. These additional funds were secured by a new $55,000 deed of trust prepared by the defendant, and which named defendant as trustee. This second deed of trust was intended to replace the Smith's original $35,000 deed of trust, and when the Lattas executed the second deed of trust, the Smiths marked the $35,000 deed of trust "paid in full." However, when defendant recorded the $55,000 deed of trust, he failed to cancel the $35,000 deed of trust.

In early 1990, the Lattas began borrowing money from United Carolina Bank (UCB) in order to make further improvements on the property. UCB made a series of loans to the Lattas, some of which were unsecured. In April and May 1990, the Lattas and UCB discussed consolidating all of the loans into a larger loan which would provide the Lattas with additional capital for renovations and give UCB adequate security. While researching the title in anticipation of the consolidated loan, Ms. Latta discovered the Smiths' $35,000 deed of trust had not been cancelled. Ms. Latta contacted defendant, and after receiving an affidavit from the Smiths confirming that the $35,000 debt had been paid, defendant cancelled the $35,000 deed of trust on 27 April 1990.

On 1 June 1990, UCB issued a commitment to the Lattas to provide a consolidation loan for $245,433. The commitment required the Lattas to provide UCB with a first lien on the property as collateral. Third-party defendant Robert Hassell, a Hillsborough attorney, was hired to serve as the closing attorney. Hassell hired another attorney, Barbara Baker, to perform the title work. Ms. Baker then hired a paralegal, Donna Ragan, as an independent contractor to perform the title research in order that Baker could give a title opinion.

As part of her research, Ragan discovered the $55,000 deed of trust in favor of the Smiths. Ragan then contacted Ms. Latta to discuss the outstanding deed of trust. There is a factual dispute regard-

ing the substance of that discussion. Ragan testified in her deposition that Ms. Latta told her the wrong deed of trust had been cancelled, and that the $55,000 lien had been paid off and should be cancelled. Ms. Latta testified in her deposition that she told Ragan she would find a mistake in the record of title, and the $35,000 deed of trust should have been cancelled at the time the $55,000 deed of trust was filed. Ragan reported the conversation to Hassell, and then called defendant to notify him that she believed the $55,000 deed of trust should be cancelled. Defendant contacted Hassell, who allegedly stated his understanding that the lien should be cancelled.

On 7 June 1990, defendant cancelled the $55,000 deed of trust without consulting the Smiths. At the time of the cancellation, the Lattas had not satisfied their debt to the Smiths. The next day, defendant sent a letter to Hassell, with a copy to the Lattas, confirming that he had cancelled the deed of trust "as per" Hassell's instructions. However, defendant did not inform the Smiths that he had cancelled the deed of trust. After defendant cancelled the Smiths' lien, UCB and the Lattas closed the $245,433 loan. Some of the proceeds of the loan were used to pay off the $50,000 Hillsborough Savings & Loan Association note which, in conjunction with the cancellation of the Smiths' deed of trust, apparently gave UCB a first lien on the property.

The Lattas filed for relief under Chapter 13 of the Bankruptcy Code on 26 September 1991. They listed the debt to the Smiths as unsecured. Because the Lattas had continued to make payments to the Smiths under the note, the Smiths did not know their deed of trust had been cancelled until after the Lattas filed their bankruptcy petition. The Smiths filed an adversary proceeding in bankruptcy court seeking secured creditor status and a determination of their rights as against UCB's claim. In a decision affirmed by the Fourth Circuit Court of Appeals, the federal district court held the Smiths were secured creditors, but that their claim was subordinated to UCB's claim. In April 1993, a foreclosure sale of the property was held. UCB was the highest bidder at $245,000. On 24 May 1993, the Lattas' Chapter 13 proceeding was converted to a Chapter 7 proceeding because it was a no asset case.

The Smiths filed this action 4 June 1993 alleging breach of trustee's duty, breach of fiduciary duty, negligence, and professional malpractice. Defendant answered and filed a third-party complaint seeking indemnification from Robert Hassell. After a hearing on 24

October 1994, the trial court granted summary judgment for the Smiths and ordered defendant to pay them the principal sum of $112,397.75 plus interest from the date of judgment. From this order and judgment, defendant appeals.

> *Brown & Bunch, by Charles Gordon Brown and Scott D. Zimmerman, for plaintiff-appellees.*

> *Bryant, Patterson, Covington & Idol, P.A., by Lee A. Patterson, II, for defendant-appellant.*

McGEE, Judge.

Defendant argues summary judgment for the Smiths was inappropriate because: 1) there were genuine issues of material fact as to what duty the defendant owed the Smiths; 2) the Smiths suffered no damages from any actions by the defendant because of an agreement to subordinate their loan to the UCB loan; and 3) there were genuine issues of material fact regarding the reasonableness of the damages awarded. Upon review of the record and briefs, we do not agree with defendant's contentions and affirm the order and judgment of the trial court.

I.

Defendant first contends the trial court erred in granting summary judgment for the Smiths because there were genuine issues of material fact concerning the defendant's duty to the Smiths under each of their four causes of action. We disagree. Because we hold that defendant breached his duty as trustee under the deed of trust as a matter of law, defendant is liable to the Smiths for damages caused by his breach. *See Shore v. Brown,* 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) (summary judgment upheld on appeal if it can be sustained on any grounds).

In this case, defendant cancelled the deed of trust without contacting the Smiths or otherwise verifying that the underlying debt had been paid. "The trustee, at his peril, is bound to know that the indebtedness is paid before he executes a release of the security, and, where he unwarrantably releases the lien of his trust deed, is liable to his principal for the damages which necessarily flow from his wrongful act." Annotation, *Duty and Liability of Trustee Under Mortgage or Deed of Trust to Holders of Bonds, or Other Obligations Secured Thereby,* 57 A.L.R. 477 (1928).

[I]n the absence of authorization by the bondholders, a trustee in a deed of trust in the nature of a mortgage has authority to release the mortgaged property without receipt of payment of the debt secured, only when it is conferred on him by the deed of trust. . . . In any event, the trustee is liable to the creditors for the damages which proximately result from his wrongful act, and the fact that the trustee believed that he acted for the best interests of all concerned does not constitute justification therefor.

55 Am. Jur. 2d *Mortgages* § 467 (1971).

[1] Our case law also supports the position that a trustee on a deed of trust is liable as a matter of law when he cancels the deed of trust without authorization of the principal and/or without determining that the underlying obligation has been satisfied. In *Davenport v. Vaughn*, 193 N.C. 646, 137 S.E. 714 (1927), the defendant Vaughn served as trustee on a deed of trust securing eight promissory notes. The plaintiff in that case was the holder in due course of one of the eight notes. Upon a default on the notes, Mr. Simmons, the holder of the other seven notes, advertised and sold the land secured by the deed of trust in the name of the trustee, Vaughn. Simmons then prepared a deed in Vaughn's name and presented the deed to him for execution. Vaughn refused to sign when Simmons presented only seven of the eight notes, claiming he had "misplaced or lost" the other note. Simmons later returned with a forged note, saying he found the missing note in his files. Vaughn then executed the deed.

In affirming the trial court's judgment for the plaintiff, our Supreme Court held the trustee "was bound to inquire for the debts made payable" out of the proceeds of the sale of the property, *Davenport*, 193 N.C. at 649, 137 S.E. at 716, and where "through haste, imprudence, or want of diligence his conduct was such as to advance the interest of one person to the injury of another, he became personally liable to the injured party." *Id.* at 650, 137 S.E. at 716. The court further held that where the trustee relied upon Simmons' "bare representation" that he held all eight notes although the trustee had "occasion to doubt and reason to scrutinize" the transaction, "the facts exhibit a degree of negligence and want of prudence which fully justify the referee and the judge in their conclusions of law." *Id.* Therefore, a trustee is "bound to inquire" whether an underlying debt has been satisfied before cancelling a deed of trust and may not rely upon the "bare representations" of others. Further, our case law holds that a trustee is restricted to the powers given by the deed of

trust unless given express permission to act by the principal or unless the power to act may be inferred from special facts and circumstances. *Wynn v. Grant,* 166 N.C. 39, 46, 81 S.E.2d 949, 953 (1914); *Gregg v. Williamson,* 246 N.C. 356, 360, 98 S.E.2d 481, 485 (1957).

**[2]** In this case, the deed of trust authorized the trustee to cancel the deed of trust "[i]f the grantor shall pay the note secured hereby." Although defendant did not cancel the $35,000 deed of trust until receiving an affidavit from the Smiths stating the underlying debt had been paid, it is undisputed that he cancelled the $55,000 deed of trust without the Smiths' permission and without the underlying note being paid. Therefore, defendant had no power to cancel the $55,000 deed of trust and is liable as a matter of law to the Smiths for their damages flowing from its unauthorized cancellation. This assignment of error is overruled.

II.

Defendant also contends the trial court erred in granting summary judgment for the Smiths because the cancellation of the deed of trust was not a proximate cause of the Smiths' damages. Defendant argues that since the Smiths signed an agreement on 19 April 1990 purporting to subordinate their loan to the UCB loan, they suffered no damages by his actions. Again, we disagree.

We first note the record creates much doubt as to whether the "Deed of Subordination" signed by the Smiths on 19 April 1990 was ever intended to subordinate their deed of trust to UCB's $245,433 deed of trust. The Smiths signed the deed of subordination contemporaneously with the Lattas' receipt of a $58,064 loan from UCB partially secured by a deed of trust on the property. The Lattas later obtained two more unsecured loans from UCB before obtaining the $245,433 consolidation loan. Robert Hassell, who prepared the deed of subordination, testified at his deposition that the deed of subordination "had nothing to do" with the $245,433 loan. Further, the parties never recorded the instrument and there would have been no need to cancel the Smiths' deed of trust if the parties believed the deed of subordination gave UCB a first priority lien on the property for the $245,433 loan. However, regardless of the intentions of the parties, we hold the deed of subordination is unenforceable as a matter of law.

**[3]** The typical subordination agreement involves property sold subject to a purchase money mortgage. The buyer is authorized to sub-

ject the land to a subsequent mortgage, which is given priority over the purchase money mortgage, in order to obtain funds for construction or development of the property. *MCB Limited v. McGowan*, 86 N.C. App. 607, 609, 359 S.E.2d 50, 52 (1987). The issue of the necessary specificity of terms required in a subordination agreement has been addressed by our courts in the case of *MCB Limited v. McGowan, supra*. In *McGowan*, this Court reviewed the development of cases dealing with enforcement of subordination agreements in California, the only jurisdiction that has dealt extensively with the issue. Although not a basis for the ultimate decision, *McGowan* favorably cites the California Court of Appeals' decision in *Stockwell v. Lindeman*, 40 Cal. Rptr. 555 (1964), for the proposition that, where all of the details of future loans are not known to the parties, "a subordination clause must state the matters which most directly affect the security of the seller's purchase money mortgage—the maximum amount of the proposed loan and the maximum rate of interest permitted on the future obligation." *McGowan*, 86 N.C. App. at 610, 359 S.E.2d at 52. Because of the unique risks involved in subordination agreements, these terms are necessary to " 'define and minimize the risk that the subordinating liens will impair or destroy the seller's security.' " *Id., quoting Handy v. Gordon*, 55 Cal. Rptr. 769, 770-71 (1967). We agree with this reasoning. Therefore, we hold that subordination agreements and clauses which subordinate loan obligations secured by a deed of trust to future loans must, at a minimum, include terms which state the maximum amount of the future loan and the maximum rate of interest permitted on the loan. This requirement serves to protect the security interest of the holder of the prior deed of trust.

In this case, had the subordination agreement contained the required terms, it would have eliminated much of the confusion between the parties as to which UCB loan the Smiths had agreed to subordinate their interest. The Smiths argue, and Robert Hassell's deposition supports their position, that they believed the agreement only subordinated their deed of trust to the $58,064 UCB loan. It seems unlikely the Smiths would have agreed to subordinate their lien to a secured loan large enough to destroy their security interest. Because the deed of subordination failed to state the maximum amount and interest rate of the future loan from UCB, it failed to adequately protect the Smiths by defining and minimizing the risk to their security interest. Therefore, the deed of subordination was unenforceable as a matter of law. Since the subordination agreement was unenforceable, the Smiths would have had a first priority lien

over UCB's interest if defendant had not wrongfully cancelled the Smiths' deed of trust. The cancellation of the deed of trust was a proximate cause of the Smiths' damages and this assignment of error is overruled.

III.

**[4]** Lastly, defendant argues the trial court erred in granting summary judgment for the Smiths because there were genuine issues of material fact regarding the reasonableness of the mitigation expenses incurred by the Smiths. Defendant has not assigned as error nor argued in his brief that the trial court erred in awarding the amount of the principal ($50,834.67) and interest ($20,250.31) due under the note or attorney's fees pursuant to N.C. Gen. Stat. § 6-21.2 ($10,662.74). Therefore, the amount in dispute is the $30,135.74 the Smiths incurred in attorneys fees and expenses pursuing their action in bankruptcy court in an attempt to mitigate damages. Neither party has raised the issue of whether attorney's fees are properly recoverable as mitigation expenses. Defendant simply contends that only a jury could determine whether the amount of legal activity and the fees charged by the Smiths' attorneys in pursuing mitigation were reasonable. Again, we disagree.

A plaintiff has the duty to avoid or minimize the consequences of the defendant's wrong. *Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 73-74 (1968). Generally, the reasonableness of mitigation efforts depends upon the facts and circumstances of the particular case and is a jury question except in the clearest of cases. *See, eg., Radford v. Norris*, 63 N.C. App. 501, 503, 305 S.E.2d 64, 65 (1983). Although most of the cases dealing with the reasonableness of mitigation efforts involve defendants who claim plaintiffs have not done enough to mitigate their damages, the principles are the same where, as here, the defendant accuses the plaintiff of doing too much. In this case, the reasonableness of the Smiths' pursuit of mitigation is clear.

From the beginning, the Smiths notified defendant and his insurance carrier that they were taking steps to mitigate their damages, including filing an adversary proceeding in bankruptcy court. In March 1992, the Smiths requested defendant and his insurance carrier either fund the costs of mitigation, take over the bankruptcy case, or release the Smiths from their duty to mitigate. Defendant and his insurance carrier took no further action until after the federal district court issued its opinion in June 1994. Thereafter, defendant agreed to reimburse the Smiths for the cost of pursuing their appeal

in the Fourth Circuit. On 6 July 1994, the Smiths sent defendant a letter updating their damages claims, including the $30,135.74 in mitigation expenses incurred from 9 January 1992 through 30 June 1994 for preparation, consultation, travel, deposing eight witnesses, and other charges related to conducting two hearings in the bankruptcy and federal district courts. Defendant stipulated in a letter dated 15 July 1994 that the Smiths had "fulfilled all mitigation obligations which could reasonably be expected of them." Defendant presented no evidence the Smiths' efforts to mitigate their damages were unreasonable. Under these facts, we hold the Smiths' actions in seeking to mitigate their damages were reasonable as a matter of law.

Nor do we find the trial court erred in determining the amount of the expenses was reasonable. Since defendant both stipulated and acknowledged by his inaction that the Smiths' actions in mitigation were reasonable, the only question remaining is whether the costs of such mitigation were reasonable. Here, the costs of mitigation consisted of the attorneys' fees and court costs, detailed in the 6 July 1994 letter and account statement, incurred in pursuing the action in bankruptcy court. Although the Smiths did not seek recovery of attorneys' fees *per se*, but instead sought recovery for costs spent in mitigation of their damages, the analysis for determining the reasonableness of attorneys' fees is instructive.

In *Barker v. Agee*, 93 N.C. App. 537, 378 S.E.2d 566 (1989), *aff'd in part, rev'd in part on other grounds*, 326 N.C. 470, 389 S.E.2d 803 (1990), this Court held the evidence and findings of fact were sufficient to support the reasonableness of an award of attorney's fees where the award was supported by: 1) an affidavit of the plaintiff's attorney and billing statements showing the actual work performed and the hourly rates charged; 2) a finding of fact as to the reasonable amount of time required for the services performed; and 3) a finding of fact as to the reasonableness of the hourly rates charged. *Id.* at 544, 378 S.E.2d at 571. In this case, the record contains an affidavit from the Smiths' attorney and an attached nineteen page statement of account detailing each charge from January 1992 to July 1994. Defendant does not argue and has not assigned as error that any of these charges are inappropriate or incorrect and has stipulated that the Smiths' efforts at mitigation were reasonable. Therefore, no finding of fact to determine the reasonableness of the amount of time required to perform the services was required. As a result, defendant's only challenge is to the reasonableness of the hourly rates charged by the Smiths' attorneys.

SMITH v. MARTIN

[124 N.C. App. 592 (1996)]

In his affidavit, the Smiths' lead attorney testified billing was based upon actual time expended multiplied by the attorney's hourly rate. The attorney further testified he charged $150 per hour, and the other attorneys from his firm who worked on this case charged $125 per hour and $90 per hour. The only evidence presented in opposition to the reasonableness of the fees charged was defendant's affidavit and the affidavit of another attorney stating that "[i]n [their] opinion, one hundred twenty-five dollars ($125.00) per hour is the maximum hourly rate ordinarily and customarily [charged] for civil litigation in this Judicial District."

First, defendant's evidence only concerns "civil litigation in this area" and does not bear on the ordinary and customary fee charged for bankruptcy litigation in federal courts. Second, even if this evidence does reflect standard charges for federal litigation, the Smiths' attorneys' overall charges fall below this threshold. Of the 214.9 total hours charged, 114.3 were charged at the rate of $150 per hour, 13.7 hours at $125 per hour, and 86.9 hours at $90 per hour, for a total charge of $26,678.50 in attorney's fees. If the Smiths' attorneys had all charged at the $125 per hour "maximum hourly rate ordinarily and customarily" charged, the total would be $184 more than the total fees actually charged. Therefore, the record contains no genuine issue of material fact regarding the reasonableness of the hourly fees charged by the Smiths' attorneys. The record does contain sufficient evidence to support the trial court's judgment that the attorneys' fees charged, and therefore the Smiths' mitigation expenses, were reasonable as a matter of law.

For the reasons stated, the order and judgment of the trial court is affirmed.

Affirmed.

Judges JOHNSON and MARTIN, John, C. concur.

Judge Johnson participated in this opinion prior to his retirement on 1 December 1996.