CHRISTIAN EMERSON DYSART AND MILDRED MAXWELL DYSART, PLAINTIFFS v. WILLIAM KENT CUMMINGS AND KIMBERLY N. CUMMINGS, DEFENDANTS

No. COA06-645

(Filed 20 February 2007)

**Vendor and Purchaser— contract to purchase home—cost of repair contingency—termination of contract—return of earnest money**

The trial court did not err in a breach of contract case by entering summary judgment allowing plaintiff purchasers to recover the $10,500 earnest money deposit they gave to defendant sellers after plaintiffs terminated the contract to purchase a home based upon structural defects where a cost of repair contingency addendum to the purchase contract permitted plaintiffs to terminate the contract and reclaim their earnest money "if a reasonable estimate of the cost of repairs" discovered pursuant to inspections permitted by the contract "exceeds $1,000," and

plaintiffs acted in a reasonable manner and in good faith and fair play when, within the 14-day time period for inspections stated in the contract, they arranged inspections of the home, received reports that the home had structural defects that would cost more than $10,000 to repair, and gave notice to defendants that they were exercising their option under the cost of repair contingency addendum to terminate the contract.

Judge STROUD dissenting.

Appeal by defendants from order entered 1 March 2006 by Judge Kenneth C. Titus in Wake County Superior Court. Heard in the Court of Appeals 10 January 2007.

*Boyce & Isley, PLLC, by Philip R. Isley, for plaintiffs-appellees.*

*Bass, Bryant & Fanney, P.L.L.C., by John Walter Bryant and Eva C. Currin, for defendants-appellants.*

TYSON, Judge.

William Kent Cummings and wife, Kimberly N. Cummings, ("defendants") appeal from order entered granting Christian Emerson Dysart and wife, Mildred Maxwell Dysart's ("plaintiffs") motion for summary judgment. We affirm.

## I. Background

On 26 August 2003, plaintiffs offered to purchase defendants' home located at 2512 White Oak Road in Raleigh, North Carolina, pursuant to an Offer to Purchase and Contract (the "Contract"). The Contract recited a purchase price of $1,200,500.00 and an earnest money deposit of $10,500.00. The deposit was tendered by plaintiffs with the Contract and received by defendants and held in escrow. Defendants signed the Contract that day. The Contract included an attached document, titled "ADDITIONAL PROVISIONS ADDENDUM" (the "Cost of Repair Contingency"), which was signed simultaneously. The Addendum states:

9. COST OF REPAIR CONTINGENCY: If a reasonable estimate of the total cost of repairs required by Paragraph 12(b) and Paragraph 12(c) of the Offer to Purchase and Contract equals or exceeds $10,000.00, then Buyer shall have the option to terminate this Contract and all earnest monies shall be returned to Buyer.

DYSART v. CUMMINGS

[181 N.C. App. 641 (2007)]

IN THE EVENT OF A CONFLICT BETWEEN THIS ADDENDUM AND THE OFFER TO PURCHASE AND CONTRACT, THIS ADDENDUM SHALL CONTROL.

Paragraph 12(b) and Paragraph 12(c) of the contract state:

12. (b) Property Inspections: Unless otherwise stated herein, Buyer shall have the option of inspecting, or obtaining at Buyers expense inspections, to determine the condition of the Property. Unless otherwise stated herein, it is a condition of this contract that (i) the built-in appliances, electrical system, plumbing system, heating and cooling systems, roof coverings (including flashing and gutters), doors and windows, exterior surfaces, structural components (including foundations, columns, chimneys, floors, walls, ceilings, and roofs), porches and decks, fireplaces and hues, crawl space and attic ventilation systems (if any), water and sewer systems (public and private), shall be performing the function for which intended and shall not be in need of immediate repair; (ii) there shall be no unusual drainage conditions or evidence of excessive moisture adversely affecting the structure(s) and (iii) there shall be no friable asbestos or existing environmental contamination. Any inspections shall be completed and written notice of necessary repairs shall be given to Seller on or before 14 days after acceptance. Seller shall provide written notice to Buyer of Seller's response within 5 days of Buyer's notice. Buyer is advised to have any inspections made prior to incurring expenses for Closing and in sufficient time to permit any required repairs to be completed by Closing.

[12.](c) Wood-Destroying Insects: Unless otherwise stated herein, Buyer shall have the option of obtaining, at Buyer's expense, a report from a licensed pest control operator on a standard form in accordance with the regulations of the North Carolina Structural Pest Control Committee, stating that as to all structures except N/A, there was no visible evidence of wood-destroying insects and containing no indication of visible damage therefrom. The report must be obtained in sufficient time so as to permit treatment, if any, and repairs, if any, to be completed prior to Closing. All treatment required shall be paid for by Seller and completed prior to Closing, unless otherwise agreed upon in writing by the parties. The Buyer is advised that the inspection report described in this paragraph may not always reveal either structural damage or damage caused by agents or organisms other

than wood-destroying insects. If new construction, Seller shall provide a standard warranty of termite soil treatment.

The Contract also stated, "[i]n the event: (1) this offer is not accepted; or (2) any of the conditions hereto are not satisfied, then all earnest monies shall be returned to Buyer . . . ."

On 8 September 2003, Philip W. McLean, Sr. ("McLean"), a licensed North Carolina home inspector, conducted a home inspection for plaintiffs. McLean's inspection reported a "[s]ignificant settlement crack at the left front corner. (the crack appears to start at the bottom and run up through and to the 2nd floor). (b) A crack in the stucco (left rear of garage wall). Further evaluation is warranted." McLean's affidavit stated his "report was made available to Plaintiffs on September 9, 2003."

Also on 8 September 2003, Mitchell Fluhrer ("Fluhrer"), a structural engineer, inspected the house. His evaluation noted structural defects to the house. Fluhrer stated in his affidavit that "in [his] professional opinion [he] would expect that this repair would well exceed more than $10,000." Fluhrer provided two separate letters dated 10 September 2003 and 11 September 2003 to plaintiff Christian Dysart that stated his findings.

Plaintiff Mildred Maxwell Dysart stated in her deposition that "[l]ater in the day of September 9, 2003, we instructed our realtor to terminate the contract pursuant to paragraph 9 of the Additional Provisions Addendum to the Offer to Purchase and Contract . . . . Our realtor faxed a notice of termination of the contract to the seller's realtor that same day."

On 9 September 2003, defendants' real estate agent, Mary Edna Williams ("Williams"), received a facsimile by telecopy from plaintiffs' real estate agent, Bill Sewell ("Sewell"). This facsimile stated "Buyer had decided to terminate contract per additional provisions addendum #9." The facsimile included the North Carolina Association of Realtors standard form "Termination of Contract and Release of Earnest Money" signed by plaintiffs on 9 September 2003 and a copy of the signed Additional Provisions Addendum.

On 10 or 11 September 2003, Steve Schmidt, a superintendent for McDonald-York, Inc., a commercial construction company located in Raleigh, North Carolina, evaluated the house. At that time, he had in his possession a letter written by Fluhrer and McLean's inspection report. During his inspection, he determined that "the left front cor-

ner of this house is leaning to the left 2.175 inches . . . at the tope [sic] of the wall. As viewed by the left side this corner is leaning 0.365 inches to the right. This is indicative of a foundation failure at this corner." Schmidt prepared a written estimate of the total cost of repair for $58,910.23.

On 11 or 12 September 2003, plaintiffs hand delivered and Williams, defendants' broker, received a letter that delineated the reasons for termination and demanded return of the $10,500.00 earnest money held in escrow. Williams stated in her deposition that "[o]n or after September 9, 2003, I received a home inspection report by Philip McLean, two reports from Fluhrer Reed with dates of September 10 and 11, 2003 and an estimate from MY Homes dated September 12, 2003, which documents were also faxed to Kent Cummings." Williams stated, "[t]he house was taken off the market when the Offer to Purchase and Agreement was signed by the Dysarts and Cummings. The house was put back on the market on September 9, 2003 to take back-up offers."

On 12 September 2003, plaintiffs delivered Schmidt's estimate to Williams and again demanded the return of the $10,500.00 deposit held in escrow. Defendants refused to release and return the escrow deposit.

Defendants contacted Marty Graff ("Graff"), a licensed contractor, to evaluate McLean's, Fluhrer's, and Schmidt's estimates. On 24 September 2003, Graff inspected the house and estimated the cost of repairs was less than $10,000.00. Graff stated in his affidavit he repaired the defects as listed in the home inspections report for $6,986.11. In August 2004, after the repairs were completed, the house appraised for $1,029,000.00. Defendants sold the house to another buyer for $1,020,000.00 on 10 August 2004.

On 10 May 2004, plaintiffs filed a complaint against defendants to recover the $10,500.00 earnest money held in escrow. Plaintiffs alleged breach of contract, conversion, unjust enrichment, and sought a declaratory judgment. On 11 October 2004, defendants answered, raised the affirmative defenses of waiver, estoppel, setoff, and counterclaimed for breach of contract and sought a declaratory judgment.

On 17 February 2006, plaintiffs moved for summary judgment. On 27 February 2006, the trial court conducted a hearing and the trial court entered summary judgment in favor of plaintiffs on 1 March 2006. Defendants appeal.

## II.  Issues

Defendants argue plaintiffs, not defendants, breached the Contract and summary judgment for plaintiffs is error.

## III.  Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial. To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal citations and quotations omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). We review an order allowing summary judgment *de novo. Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

## IV.  Breach of Contract

"The right to contract is recognized as being within the protection of the Fifth and Fourteenth Amendments to the Constitution of the United States . . . and protected by state constitutions." *Alford v. Insurance Co.*, 248 N.C. 224, 227, 103 S.E.2d 8, 10-11 (1958). "Persons . . . have a right to make any contract not contrary to law or public policy." *Fulcher v. Nelson*, 273 N.C. 221, 223, 159 S.E.2d 519, 521 (1968) (quoting 2 Strong, North Carolina Index 2d, Contracts § 1).

DYSART v. CUMMINGS

[181 N.C. App. 641 (2007)]

"[W]hen parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honorably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish." *Knutton v. Cofield*, 273 N.C. 355, 363, 160 S.E.2d 29, 36 (1968).

"The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948); *see Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973) (When a court is asked to interpret a contract, its primary purpose is to ascertain the intention of the parties.). "The intention of the parties is gleaned from the entire instrument and not from detached portions." *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 316, 385 S.E.2d 553, 555 (1989).

"It is well settled that a contract is construed as a whole." *Id.* "Individual clauses are to be considered in context." *Id.* at 316, 385 S.E.2d at 555-56. "All parts of the contract will be given effect if possible." *Id.* at 316, 385 S.E.2d at 556. "Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play." *Mezzanotte v. Freeland*, 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974). A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law. *Lane*, 284 N.C. at 410, 200 S.E.2d at 624-25.

In *Midulla v. Howard A. Cain, Inc.*, this Court affirmed summary judgment in favor of plaintiffs. 133 N.C. App. 306, 308-09, 515 S.E.2d 244, 246-47 (1999). The parties' contract contained the same addendum that is before us here. *Id.* This Court held plaintiffs' offer was contingent on a "[r]eview of covenants and restrictions, the body of which are satisfactory to Buyer." *Id.* at 309, 515 S.E.2d at 246. Pursuant to the addendum to the contract, "plaintiffs had the discretion to cancel the Contract if they were not satisfied with the covenants and restrictions governing the area where the property was located." *Id.*

This Court affirmed summary judgment for plaintiffs and held:

[t]he Contract gave plaintiffs the discretionary power to cancel the Contract if they were not satisfied with the covenants and

restrictions. The record reflects that plaintiffs believed that "the covenants and restrictions exposed them to the risk of becoming obligated for payments in which they had an inadequate voice in approving." Under the terms of the Contract, this would be an adequate reason to cancel the Contract.

*Id.* at 309-10, 515 S.E.2d at 247.

As stated above, the Addendum to the Contract included a "Cost of Repair Contingency" clause, which states:

9.  COST OF REPAIR CONTINGENCY: If a reasonable estimate of the total cost of repairs required by Paragraph 12(b) and Paragraph 12(c) of the Offer to Purchase and Contract equals or exceeds $10,000.00, then *Buyer shall have the option to terminate this Contract and all earnest monies shall be returned to Buyer.*

IN THE EVENT OF A CONFLICT BETWEEN THIS ADDENDUM AND THE OFFER TO PURCHASE AND CONTRACT, THIS ADDENDUM SHALL CONTROL.

(Emphasis supplied).

On 8 or 9 September 2003, plaintiffs obtained an estimate from McLean, a licensed North Carolina home inspector, and Fluhrer, a structural engineer, that the estimated total cost of repairs exceeded $10,000.00. On 9 September 2003, plaintiffs faxed, and defendants received, a North Carolina Association of Realtors standard form "Termination of Contract and Release of Earnest Money" signed by plaintiffs. The form's cover sheet stated "Buyer had decided to terminate contract per additional provisions addendum #9." On 9 September 2003, defendants placed their house back on the market to accept back-up offers.

The Cost of Repair Contingency gave plaintiffs the discretionary power to terminate the contract. *See Midulla,* 133 N.C. App. at 307, 515 S.E.2d at 245 (The buyer's contract to purchase was contingent upon a "review of covenants and restrictions, the body of which are satisfactory to Buyer."); *see also Mezzanotte,* 20 N.C. App. at 13, 200 S.E.2d at 412 (The buyer's contract to purchase was contingent upon the buyer's ability "to secure a second mortgage from North Carolina National Bank on such terms and conditions as are satisfactory to them in order to finance the closing and to secure additional working capital.").

DYSART v. CUMMINGS

[181 N.C. App. 641 (2007)]

Plaintiffs also acted in a reasonable manner and in good faith and fair play when they promptly arranged and received a home inspection within the fourteen-day time frame stated in paragraph 12(b), even though the fourteen-day time period was not explicitly stated in the Cost of Repair Contingency Addendum.

Both McLean, a licensed home inspector, and Fluhrer, a structural engineer, notified plaintiffs within the fourteen-day period that structural problems existed with the house, and estimated repairs would exceed $10,000.00. Plaintiffs notified Sewell, their broker, within the fourteen-day period that they intended to terminate the Contract pursuant to the Cost of Repair Contingency. Sewell notified Williams, defendants' broker, within the fourteen-day period through telecopy that "Buyer had decided to terminate contract per additional provisions addendum #9." Williams stated in her affidavit that "[t]he house was put back on the market on September 9, 2003 to take back-up offers."

Plaintiffs promptly and properly exercised their discretionary right to cancel the contract after determining the estimated cost of repairs within fourteen days, although they were not explicitly required to do so under the Addendum. Plaintiffs promptly notified Sewell, who notified Williams of plaintiffs' intent to terminate the Contract pursuant to the Cost of Repair Contingency. Plaintiffs promptly and properly terminated the Contract, which defendants acknowledged by placing the house back on the market for sale within fourteen days of the Contract. Plaintiffs are entitled to the return of their earnest money deposited with defendants. This assignment of error is overruled.

## V. Conclusion

The contract was properly interpreted by the trial court as a matter of law. *Lane*, 284 N.C. at 410, 200 S.E.2d at 624-25. The trial court did not err by granting summary judgment in favor of plaintiffs and properly ordering the $10,500.00 earnest money deposit to be returned to plaintiffs. The trial court's order is affirmed.

Affirmed.

Judge STEPHENS concurs.

Judge STROUD dissents by separate opinion.

STROUD, Judge dissenting.

I conclude that there are genuine issues of material fact as to whether plaintiffs provided adequate notice of termination of the purchase contract and whether plaintiffs' termination of the contract was based upon a reasonable estimate of the cost of necessary repairs to the property. Accordingly, I would reverse the trial court order granting summary judgment in favor of plaintiffs and remand this case to Superior Court, Wake County for trial. For this reason, I respectfully dissent.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party," *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001); thus, facts asserted by the nonmoving party are presumed to be true, *see e.g., Norfolk & W. Ry. Co. v. Werner Indus. Inc.*, 286 N.C. 89, 97, 209 S.E.2d 734, 738 (1974), and the moving party carries the burden of proof to show that there is no triable issue of fact, *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (1988). On appeal, this Court conducts *de novo* review of a trial court order granting summary judgment. *See Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

Defendants present two questions for review by this Court: (1) whether plaintiffs breached the purchase contract by failing to provide defendants with a list of necessary repairs within fourteen days of entering the contract and (2) whether plaintiffs breached the purchase contract by terminating the contract based on an unreasonable repair estimate. The trial court's order awarding summary judgment to plaintiffs is appropriate only if the pleadings, affidavits, and other evidence show as a matter of law that plaintiffs' termination was permitted by the purchase contract. Two clauses contained in the purchase contract govern my analysis of these issues: (1) contract clause 12, titled "Property Disclosure and Inspections" and (2) addendum clause 9, titled "Cost of Repair Contingency." The purchase contract entered into by the parties was a standard form "Offer to Purchase and Contract" jointly approved by the North Carolina Bar Association and the North Carolina Association of Realtors.

Contract clause 12 defines plaintiffs' right to inspect the property and provides in pertinent part that

> [a]ny inspections shall be completed and written notice of necessary repairs shall be given to Seller [defendants] on or before 14 days after acceptance. . . . [I]f any repairs are necessary, Seller [defendants] shall have the option of completing them or refusing to complete them. If Seller [defendants] elects not to complete the repairs, then Buyer [plaintiffs] shall have the option of accepting the [p]roperty in its present condition or terminating this contract, in which case all earnest monies shall be refunded.

(Emphasis added.) Addendum clause 9 permits plaintiffs to choose to terminate the contract and reclaim their earnest money "[i]f a reasonable estimate of the total cost of repairs" discovered pursuant to the inspections permitted by contract clause 12 "exceeds $10,000."

Because "contract provisions should not be construed as conflicting unless no other reasonable interpretation is possible," *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 316, 385 S.E.2d 553, 556 (1989), this Court must first consider whether addendum clause 9 and contract clause 12 can be reconciled. I conclude that these clauses may be read together without conflict.

The plain language of addendum clause 9, expressly incorporates contract clause 12; thus, addendum clause 9 also requires the "estimate of the total cost of repairs" be provided to defendants "in writing . . . on or before 14 days after acceptance" of plaintiffs' offer to purchase. If the clauses were read separately, then plaintiffs would be permitted to exercise an option to terminate at any time, even on the day of closing. This alternative interpretation, which is advanced by plaintiffs, is unsupported by the incorporation of contract clause 12 into addendum clause 9 and results in illogical and unintended consequences in the performance of the contract. The interpretation of these clauses is of particular concern because the "Offer to Purchase and Contract" at issue is a standard form contract which is used extensively in North Carolina real estate transactions.

Although plaintiffs notified defendants' real estate agent by fax that they had "decided to terminate contract per additional provisions addendum #9" within 14 days of acceptance, it is undisputed that the fax did not state why plaintiffs were terminating the contract, did not include a list of necessary repairs, and did not contain an estimate of the cost of repairs. Plaintiffs did not provide any further details of

their decision to terminate until after the 14 day period had passed. Considering this evidence in the light most favorable to defendants, I would hold that there is a question of material fact as to whether plaintiffs provided adequate notice of termination pursuant to contract clause 12 and addendum clause 9 of the "Offer to Purchase and Contract" entered into by the parties.

As stated above, addendum clause 9 is a "Cost of Repair Contingency" provision. The majority concludes that this clause gave plaintiffs "discretionary power to terminate the contract" subject only to a requirement that plaintiffs "act[] in a reasonable manner and in good faith," citing *Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E.2d 410 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974) and *Midulla v. Howard A. Cain Co.*, 133 N.C. App. 306, 515 S.E.2d 244 (1999) in support of its decision. I find the contingency clauses at issue in *Mezzanotte* and *Midulla* dispositively different from addendum clause 9.

In *Mezzanotte*, the real estate contract provided "[t]his agreement is contingent upon parties of the second part [plaintiff] being able to secure a second mortgage from North Carolina National Bank on such terms and conditions as are satisfactory to them in order to finance the closing and to secure additional working capital . . . ." 20 N.C. App. at 13, 200 S.E.2d at 412 (alteration in original) (emphasis added). In *Midulla*, the real estate contract provided that the plaintiffs' offer to purchase was contingent upon "[r]eview of [residential] covenants and restrictions, the body of which are satisfactory to Buyer [plaintiffs]." 133 N.C. App. at 307, 515 S.E.2d at 245 (emphasis added). In both *Mezzanotte* and *Midulla*, this Court determined that the plaintiff buyers had discretionary power to terminate the respective real estate contracts because they were not "satisfied," and the Court emphasized that an "implied promise of good faith and reasonable effort" accompanies any discretionary option to terminate a real estate contract that is contingent on one party's "satisfaction."[1] *Mezzanotte*, 20 N.C. App. at 17, 200 S.E.2d at 415; *Midulla*, 133 N.C. App. at 309, 515 S.E.2d at 246.

---

1. In *Midulla*, this Court reviewed a trial court's entry of summary judgment against the sellers. 133 N.C. App. at 308, 515 S.E.2d at 245. Because the sellers did not offer any evidence of bad faith on the part of the buyers, this Court affirmed the trial court order; however, summary judgment would have been inappropriate in *Mezzanotte* if the plaintiffs' affidavits had contained factual allegations giving rise to a jury question of bad faith, or, as in the case *sub judice*, reasonableness. *Id.* at 309, 515 S.E.2d at 246.

In the case *sub judice*, plaintiffs' option to terminate the real estate contract is contingent on "a <u>reasonable estimate</u> of the total cost of repairs," not on an estimate that is <u>satisfactory</u> to plaintiffs.[2] Although discretionary in the sense that plaintiffs may choose to honor the purchase contract despite the existence of necessary repairs in excess of $10,000, plaintiffs' right to terminate the contract pursuant to addendum clause 9 is expressly limited by the requirement that the estimated cost of repairs be reasonable. This means that to prevail on summary judgment, plaintiffs must show that they obtained a "reasonable estimate of the total cost of repairs" in excess of $10,000.

Reasonableness is a quintessential jury question. *See Radford v. Norris*, 63 N.C. App. 501, 503, 305 S.E.2d 64, 65 (1983) ("Since the test is one of reasonableness, and depends upon the circumstances of the particular case, it is a jury question except in the clearest of cases."). North Carolina courts consistently hold that "reasonableness" is a factual issue for the jury in many different types of cases. *See Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 224, 513 S.E.2d 320, 327 (1999) (The question of justifiable reliance in an action for negligent misrepresentation is "analogous to that of reasonable reliance in fraud actions, where it is generally for the jury to decide whether plaintiff relied upon the representations made by defendant.") (internal quotation omitted); *State Props. LLC v. Ray*, 155 N.C. App. 65, 73, 574 S.E.2d 180, 186 (2002) (In an action for fraud, "[t]he reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion."); *NationsBank of N.C., N.A. v. American Doubloon Corp.*, 125 N.C. App. 494, 499, 481 S.E.2d 387, 390 (1997) (The commercial reasonableness of a bank's retention of collateral after default on a loan

---

2. In *Mezzanotte*, this Court reviewed a judgment entered pursuant to N.C. Gen. Stat. § 1A-1, Rule 52 following a bench trial. 20 N.C. App. at 14, 200 S.E.2d at 413. On appeal, this Court considered whether the trial court's findings of fact were supported by competent evidence and whether the court's findings of fact supported its conclusions of law. *See Hollerbach v. Hollerbach*, 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988) ("The standard by which we review the findings [of a trial court sitting without a jury] is whether any competent evidence exists in the record to support them."). This standard of review is significantly different from the standard at issue in the case *sub judice*, which requires this Court to determine whether there is a genuine issue of material fact for jury consideration. Moreover, in *Mezzanotte* the plaintiff buyers filed an action to <u>enforce</u> the contract for sale, and defendant sellers argued that the purchase contract was illusory because the contingency was based on plaintiffs' "satisfaction." 20 N.C. App. at 16-17, 200 S.E.2d at 414. Here, the issue is whether plaintiffs breached the contract, not whether the contract itself is supported by adequate consideration.

"is a jury question and does not readily lend itself to summary judgment" because "reasonable minds may differ over what is commercially reasonable."); *Smith v. Martin,* 124 N.C. App. 592, 600, 478 S.E.2d 228, 233 (1996) (The reasonableness of a plaintiff's mitigation efforts in an action for wrongful cancellation of a deed of trust "depends upon the facts and circumstances of the particular case and is a jury question except in the clearest of cases."); *Snead v. Holloman,* 101 N.C. App. 462, 467-68, 400 S.E.2d 91, 94 (1991) (The reasonableness of a plaintiff's failure to follow medical advice in a negligence action is a jury question that is relevant to the amount of damages the plaintiff may recover.). However, by expressly determining that "[p]laintiffs acted in a reasonable manner and in good faith," the majority removes this question from jury consideration and resolves the issue as a matter of law. Considering the evidence presented in the light most favorable to defendants, I would hold that there is a genuine issue of material fact as to whether the repair estimate obtained by plaintiffs was reasonable.

My decision is supported by the following evidence forecast by defendants: (1) plaintiffs' initial estimate by McLean was based upon a cursory inspection during which McLean did not even look at the foundation under defendants' house; even so, McLean gave the opinion that the foundation was settling and major repairs were needed, (2) the crack McLean observed on the exterior of the home was not an indication of settling at all but was actually a superficial defect caused by water dripping into the stonework from leaky gutters, (3) plaintiffs' estimate of $58,910.23 was not credible when considering that defendants actually completed the necessary repairs for $6,986.11, and, (4) plaintiffs had given other reasons for wanting to terminate the contract that were unrelated to the condition of the house. From this evidence, a jury could find that plaintiffs' repair estimate was unreasonable.

For the reasons stated above, I would reverse the trial court's order awarding summary judgment to plaintiffs and remand this case to Superior Court, Wake County for trial. Accordingly, I respectfully dissent.