C. H. PATTERSON v. J. N. BRYANT, JUNIUS D. GRIMES, C. A. TUR-NAGE, F. S. WORTHY AND S. B. ETHRIDGE, TRADING AS WORTHY & ETHRIDGE; S. B. ETHRIDGE, INDIVIDUALLY; J. S. HUMPHRY AND R. F. HUMPHRY, TRADING AS HUMPHRY BROTHERS, AND J. S. HUMPHRY AND R. S. HUMPHRY, INDIVIDUALLY.

(Filed 13 December, 1939.)

**1. Vendor and Purchaser § 25—**

The purchaser's right of action against the vendor for failure of title is not predicated upon any warranty, but the purchaser is entitled to recover upon a proper showing, even when there are no warranties in the deed, upon the broad principle that the vendor is under duty to refrain from deliberately selling the same property a second time with knowledge that he is jeopardizing the right of his purchasers.

**2. Deeds § 9—**

C. S., 3309, provides, for reasons of public policy, that the rights of successive grantees of the same property shall be determined by registration, and that even actual knowledge on the part of the grantee in a registered instrument of the execution of a prior unregistered deed will not defeat his title as purchaser for a valuable consideration in the absence of fraud or matters creating an estoppel.

**3. Deeds § 10a—**

An unregistered deed is good as between the parties and the fact that it is not registered does not affect the equities between the parties, the sole purpose of the statute being to determine and make certain the question of title.

**4. Same: Equity § 2: Vendor and Purchaser § 25—**

The registration laws are not for the protection of the grantor, and therefore laches on the part of his first grantee in failing to promptly record his deed is not available as an equitable defense in such grantee's action for damages for failure of title by reason of the execution by the grantor of a second deed to the same property which is first recorded.

**5. Vendor and Purchaser § 25—Evidence that defendant deliberately executed two deeds to same property entitles grantee in deed secondly recorded to recovery.**

Defendant conveyed certain timber by deed to plaintiff and thereafter executed deed to a third person, which deed included in its conveyance the same timber rights conveyed in prior deed. There was evidence that

defendant hesitated before executing the second deed and sought to justify his action by raising a question as to the fairness and validity of the former transaction. The second deed was first recorded. Plaintiff instituted this action for damages for failure of title. *Held:* The evidence is sufficient to sustain an inference that defendant was aware that he was twice selling the same property and receiving the purchase price from each of his grantees, and equity will not permit him to be unjustly enriched by retaining both purchase prices but will force him to make restitution to plaintiff as upon a *quasi* contract as the party injured by defendant's breach of duty in jeopardizing the rights of his grantees by executing two deeds to the same property.

APPEAL by defendant, J. N. Bryant, from *Harris, J.,* at March Term, 1939, of PENDER. Affirmed.

The plaintiff complained, and the evidence tended to show, that the defendant conveyed to him the timber located on a certain tract of land in Pender County, described in the complaint, and received the purchase price therefor. The plaintiff did not immediately cause his deed to be registered. Meantime, the defendant, for a valuable consideration, included the same timber in a deed made to other parties, who promptly registered their deed. The last mentioned deed was recorded on 7 September, 1937; ten days later the plaintiff's deed was recorded. The time given the plaintiff to cut the timber had not expired.

In the course of the trial a judgment of nonsuit was entered as to the grantees under the deed last executed, from which order the plaintiff did not appeal, and the suit proceeded against Bryant.

In the evidence supporting the contentions of the plaintiff it was developed that the defendant at the time of the execution of the second deed hesitated about making it, recalled and spoke of the transaction he had had with the plaintiff about the timber, and raised some question as to whether the deed made to the plaintiff ought to have included certain timber which he was then about to convey under the second deed, and appealed to the recollection of persons standing by to verify his impression of the transaction theretofore had with Patterson.

In his answer to the complaint the defendant Bryant alleged that he had been defrauded by the plaintiff in the inclusion in the first deed to plaintiff of the timber in dispute, and in his testimony reviewed the transaction with Patterson leading to the execution of the deed, claimed that he had been deceived as to the conditions on the land as being unfavorable to the cutting of the timber, and as to the quantity of timber in the swamp, and claimed that he only intended to give the plaintiff the right to cut not exceeding fifteen trees upon the area afterward included in the deed made to Grimes, Worthy, and others. He claimed that at the time of the execution of the deed to Patterson he was sick in bed and signed the deed only at the insistence of Patterson.

In apt time the defendant moved for judgment as of nonsuit, both at the conclusion of the plaintiff's evidence and at the conclusion of all the evidence, which motion was declined.

Upon the issues submitted to the jury a judgment was entered awarding $350.00 damages to the plaintiff in compensation for the injuries done him through the alleged wrongful acts of the defendant, from which judgment defendant appealed, assigning errors.

*John J. Best for defendant, appellant.*
*Hackler & Allen and C. E. McCullen, Jr., for plaintiff, appellee.*

SEAWELL, J.   The only question argued by the defendant in this Court relates to the refusal of the trial judge to allow his motion for judgment as of nonsuit made at the conclusion of the plaintiff's evidence and renewed at the conclusion of all the evidence.

Defendant's counsel contends that the motion for judgment as of nonsuit should have been allowed (1) because there was no allegation or evidence of the breach of any covenant in the deed from defendant to plaintiff; (2) that there was no allegation or evidence of any unjust enrichment of the defendant; and (3) that there was no allegation or evidence of fraud or guilty knowledge or intentional unfair dealings on the part of the defendant.   It is further pointed out that the plaintiff was negligent or guilty of laches in recording his deed, and that his loss or injury, if any, was due to that cause.

The deed does not, in fact, contain any covenants or warranties, but the rights of the plaintiff in this suit are not predicated upon a breach of any warranty in the deed, but upon a broader principle: the breach of duty which he conceives the defendant owed him of refraining from the deliberate selling of the land a second time, with the knowledge that he was jeopardizing the rights of plaintiff, and thus setting in motion a chain of events that defeated the title of the plaintiff, while it left the defendant enriched by the purchase-price paid to him by the plaintiff, as well as that paid to him by his subsequent grantees of the same property.

The single question before us is whether in equity the defendant may be allowed to retain the money received as a purchase price from both of these parties, and, if not, to whom restitution should be made.

It is true in a general sense that the plaintiff lost the title to his land by his failure to record his deed promptly.   For reasons of public policy, C. S., 3309, in cases coming within its purview, undertakes to determine the question of title upon the fact of registration, making the unregistered title ineffective as against a subsequent holder from the same grantor for a valuable consideration except from registration.   For the

same reasons of public policy, actual knowledge on the part of the holder of the registered title of the execution of the prior deed, in the absence of fraud or matters creating an estoppel, will not avail to defeat his title as a purchaser for a valuable consideration.

The statute is intended to render titles certain and secure and to prevent confusion, mistake, and fraud growing out of the existence of unregistered and unknown titles which might defeat a subsequent purchaser for value. *Warren v. Williford,* 148 N. C., 474, 62 S. E., 697; *Weston v. Lumber Co.,* 160 N. C., 263, 75 S. E., 800. It is objective in its character and does not attempt to settle any equities which might exist between a grantor and those to whom he has sold his land, and those to whom he has resold it either mistakenly or deliberately and fraudulently. The deed made by him in the first instance is good *inter partes. Hargrove v. Adcock,* 111 N. C., 166, 16 S. E., 16; *Warren v. Williford, supra; Weston v. Lumber Co., supra.* Whether it is registered at all is of no consequence to the grantor, and the statute requiring conveyances to be registered is not for his protection, but, as stated, for protection of a subsequent purchaser with whom he has seen fit to deal; therefore, laches on the part of his first grantee in recording his deed is not available to defendant as an equitable defense. The first grantee is not bound to anticipate that the grantor would sell the property again and rush off to the registry office to forestall such a breach of faith. As between the parties, any loss sustained by the plaintiff in the transaction complained of must be regarded as the result of the defendant's conduct in dealing doubly with the plaintiff and with subsequent grantees to whom he successfully transferred the timber.

It cannot be said that the defendant was unaware of the fact that he was selling his timber a second time and a second time receiving pay for it. According to witnesses present when the deed to Grimes and others was signed, the defendant there sought to justify his action by raising a question as to the fairness and validity of the former transaction between himself and this plaintiff—hesitating to sign the deed until he could receive assurances that witnesses might remember phases of the former transaction agreeable to his present purpose. The evidence was sufficient to sustain an inference that the act was deliberate and that the defendant might at the time have known that he was violating a duty either to the plaintiff or to the persons who were then about to receive title to the land. That was a violation of duty, the consequences of which will be referred to the act of the defendant himself, without whose wrongful act the plaintiff would not have sustained his loss.

But to sustain this action it is not necessary for the plaintiff to maintain it as one of tort. If we wish to be technical about the forms of

action, which we consider wholly unnecessary in this case, it may be regarded as an action of *assumpsit,* involving the principles of *quasi* contract; which are broad enough to include practically every instance where a defendant has received money which he is "obliged by the ties of natural justice and equity to refund." 41 C. J., p. 29, note 7 (c). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of the law; Restitution. Am. Law Inst. 1937, p. 27.

According to the facts found by the jury, the plaintiff has paid to the defendant a sum of money for which he received no value. The defendant has in his hands this money, as well as the price paid to him for the same thing by his subsequent grantees. Equity will not permit him to retain both. Restitution must be made to the plaintiff, whose present condition is, in part at least, due to the conduct of the defendant. In this case the amount of restitution was properly left to the jury, upon the evidence.

The judgment is
Affirmed.