JOE M. SNIPES v. IDA M. SNIPES (WIDOW); VERNON P. DAVIS AND WIFE, BARBARA S. DAVIS

No. 8115SC324

(Filed 2 February 1982)

**1. Rules of Civil Procedure § 50.5— failure to object to noncompliance with Rule 50**

Defendants waived their ability to object on appeal to plaintiff's failure to comply with Rule 50(a), not stating the specific grounds for his directed verdict motion, when they failed to object at trial.

2. **Landlord and Tenant § 13.2; Vendor and Purchaser § 1— right of first refusal in lease—not unreasonable restraint on alienation**

   The right of first refusal of purchase provision in a lease was not an unreasonable restraint on alienation as (1) the duration of the right fell within the perpetuities period and (2) the price provisions in the lease were reasonable.

3. **Landlord and Tenant § 18— failure to make rental payments—lease still in effect**

   Plaintiff's failure to make rental payments did not result in the lease between the parties becoming ineffective as, under N.C.G.S. 42-3, forfeiture for failure to pay rent is not effective until the expiration of ten days after a demand is made on the lessee for all past due rent, and a statement by defendant that she "wanted to get all this business settled" was not clear and unequivocal enough to constitute a demand.

   Judge HEDRICK dissenting.

APPEAL by defendants from *Bailey, Judge.* Judgment filed 9 December 1980 in Superior Court, CHATHAM County. Heard in the Court of Appeals 10 November 1981.

This action arises out of a lease agreement between Joe M. Snipes and wife and defendant Ida M. Snipes and her deceased husband. The agreement provided that Grady and Ida Snipes would lease a certain parcel of real estate to the plaintiff and his wife for a period of five years, beginning 1 October 1974, with an option to renew the lease for two additional five-year periods. The lease also provided that the plaintiff was to have "an absolute right of first refusal in any contract to sell any of the interest" that Grady and Ida Snipes had in the real estate which was the subject of the lease agreement. The lease further stated that "[t]he intention of this provision is to allow Joe M. Snipes to have the opportunity to keep the real estate which is the subject of this Lease in the Snipes family." The lease contains no forfeiture clause for nonpayment of rent.

On 19 April 1977, Ida M. Snipes executed two deeds to Vernon P. Davis and wife, wherein she conveyed all of her interest in the leased property which she had acquired from her deceased husband. Plaintiff was not notified of the sale and was therefore not given the opportunity to purchase the land as provided in the right of first refusal clause of the lease.

Plaintiff brought this action in an effort to have the deeds declared void and to obtain an order of specific performance re-

quiring that the defendant widow convey the property to him. Defendants counterclaimed, alleging breach of the lease agreement for failure to pay rent and asking that the lease be declared terminated.

At trial plaintiff testified that on 4 October 1975 he met with Ida Snipes and at that time she agreed to forego weekly rental payments until some arrangement could be made between them concerning payment of taxes on the leased land. Plaintiff had some outstanding debts at the time and had apparently paid more than his share of the taxes for the previous year. Eventually plaintiff did pay the 1975 property taxes.

There were no further discussions between the parties until October or November of 1976 when Ida Snipes approached plaintiff concerning payment for a truck she had sold to him. During the course of the conversation she expressed the desire that they "should settle the affair" with respect to the lease, including the possibility that plaintiff either exercise his option to buy or that they reach an agreement to sell the property to a third party. Mrs. Snipes made no demand for rent at this time, but only stated that she would "see her lawyer and get back in touch" with plaintiff. Her attorney then contacted the plaintiff. Mrs. Snipes was not present at the meeting. Plaintiff expressed his willingness to "settle the affair" and the attorney stated that he would talk with his client and get back in touch. No demand was made for rent. Six months later Mrs. Snipes informed plaintiff that the property had been sold to the Davises.

Mrs. Snipes admitted that she had signed the lease. Her recollection of the November 1975 conversation with the plaintiff was as follows:

> The next discussion I had with Joe Snipes concerning the rent that was provided in the lease was in October or November of 1975, he came and told me that he was unable to make the rent payments; and he talked about the land tax having to be paid. I offered to borrow the money to pay my part of the tax; and he said he was not clear as to how much my part was. So we decided to let this go for a little while and get everything straight and then pick it up again. I believe that he stated that he had paid the land tax for the previous year.

She also testified that she met with plaintiff in October or November of 1976 and that during that conversation she stated that she "wanted to get all this business settled." However, she did not make a demand for rent at this time or at any subsequent time before selling the land.

Plaintiff moved for a directed verdict at the close of all the evidence and this motion was granted. The trial court denied defendants' motions for directed verdicts on their counterclaims.

*Barber, Holmes & McLaurin, by Edward S. Holmes, and B. C. Smith for plaintiff appellee.*

*Gunn & Messick, by Paul S. Messick, Jr., for defendant appellants.*

MARTIN (Harry C.), Judge.

[1] Defendants first contend that it was error for the trial court to grant plaintiff's motion for directed verdict where plaintiff failed to state the specific grounds for his motion as required by Rule 50(a) of the North Carolina Rules of Civil Procedure. Not only does the record disclose plaintiff's failure to comply with Rule 50(a), but it also discloses that defendants failed to object at trial to the Rule 50(a) violation. "[W]hen a motion for a directed verdict is granted, the adverse party who did not make a specific objection at trial to the movant's failure to state specific grounds therefor is precluded from raising the objection on appeal." *Byerly v. Byerly*, 38 N.C. App. 551, 553, 248 S.E. 2d 433, 435 (1978).

Defendants further contend that the trial court erred in granting a motion for a directed verdict in favor of the party having the burden of proof "upon a controverted issue involving the credibility of witnesses."

It is now established law in North Carolina that any party may move for a directed verdict at the close of all the evidence. *Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). Where the moving party has the burden of proof, our courts generally will not direct a verdict if credibility remains an issue unless "the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn." *Id.* at 536, 256 S.E. 2d at 395. The Court in *Burnette* set out three situations in which

the credibility of the movant's evidence is manifest as a matter of law:

> (1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests. . . .

> (2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents. . . .

> (3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

297 N.C. at 537-38, 256 S.E. 2d at 396 (citations omitted).

Plaintiff contends that his right to recover does not depend upon the credibility of his testimony, but is established by the documents in evidence and the admissions of the defendants, as follows:

> (1) A valid written lease was executed between the parties. The lease is recorded in the Office of the Register of Deeds of Chatham County and was admitted and stipulated by both parties.

> (2) This lease includes a provision which, in unequivocal terms, entitles plaintiff to a right of first refusal if Ida Snipes decided to sell the subject property.

> (3) Mrs. Snipes sold the property without first notifying the plaintiff of her intention or offering plaintiff the opportunity to purchase. The deeds conveying the property to Vernon P. Davis and wife, Barbara S. Davis, were duly executed and recorded and were introduced into evidence at trial.

> (4) The lease was in effect at the time of the sale.

[2] Defendants would first urge us to hold that the right of first refusal language contained in the lease was unenforceable as an unreasonable restraint upon alienation. Our Supreme Court in *Smith v. Mitchell*, 301 N.C. 58, 269 S.E. 2d 608 (1980), addressed this precise question. The Court considered two factors in determining the reasonableness or unreasonableness of a preemptive

right or a right of first refusal. The first factor is the duration of the right, which should be limited to a period within the rule against perpetuities. As the total period of the Snipes lease would not exceed fifteen years, including the two five-year renewal periods, the duration of the right falls well within the perpetuities limit. Second, the court considered the provisions in the lease for determining the price of exercising the right and held "that a reasonable price provision in a preemptive right is one which somehow links the price to the fair market value of the land, or to the price the seller is willing to accept from third parties." *Id.* at 66, 269 S.E. 2d at 613. Defendants contend that the language in the lease that "Joe M. Snipes shall have an absolute right of first refusal in any contract to sell" the leased property fails as a reasonable price provision. We disagree. The language contemplates that Ida Snipes "contract" or agree on a price with a buyer. It presumes that the price will be one that she would be willing to accept from a third party.

Whether the lease contained a valid preemptive right is a question of law and not of fact. On this issue Judge Bailey was correct in granting plaintiff's motion for a directed verdict. *See Thornton v. Thornton,* 45 N.C. App. 25, 262 S.E. 2d 326 (1980).

[3] Defendants next argue that the lease was not in effect at the time of the sale because of plaintiff's breach in failing to make the rental payments. For the reasons set out below, we find it unnecessary to discuss the various contentions of the parties respecting the oral agreements made between them. We note that neither party raised a Statute of Frauds defense in the pleadings, nor was this interesting question discussed in the briefs.

Plaintiff testified that he failed to make rental payments beginning 4 October 1975. Subsequent to this date no demand was made on him either to pay past due rent or to resume rental payments. As the lease contains no forfeiture clause for failure to pay rent, we must look to N.C.G.S. 42-3 and the rule in *Reynolds v. Earley,* 241 N.C. 521, 85 S.E. 2d 904 (1955). That is, a forfeiture under N.C.G.S. 42-3 for failure to pay rent is not effective until the expiration of ten days after a demand is made on the lessee for all past due rent.

We reject defendants' contention that plaintiff's failure to take the initiative and "settle the affair" or tender rent subse-

quent to 4 October 1975 constituted positive and unequivocal acts
and conduct such as to infer an abandonment or rescission of the
lease and to make demand unnecessary. The language of the
statute is clear. Demand is a necessary prerequisite to forfeiture
for nonpayment of rent.

Nor can we agree that Ida Snipes's conversation with plain-
tiff in October or November of 1976 constituted a "demand." At
that time she merely informed plaintiff that she "wanted to get
all this business settled." We hold that to constitute a "demand"
under N.C.G.S. 42-3, a clear, unequivocal statement, either oral or
written, requiring the lessee to pay all past due rent, is
necessary. *See* 26A C.J.S. Demand 169 (1956). A demand is a
peremptory claim to a thing as a matter of right. Black's Law Dic-
tionary 516 (4th ed. rev. 1968). The demand must be made with
sufficient authority to place the lessee on notice that the lessor
intends to exercise his or her statutory right to forfeiture for non-
payment of rent. Thus we find no error in the trial court's grant-
ing a directed verdict in favor of plaintiff based upon the
existence of a valid lease in force at the time of the sale. Con-
versely, the trial court was correct in denying defendants' mo-
tions for directed verdicts on their counterclaims. We agree with
plaintiff that his case is fully established by the documents in
evidence and the admissions of the defendants.

Defendants correctly point out that the trial judge included
findings of fact and conclusions of law in the judgment. In *Kelly
v. Harvester Co.*, 278 N.C. 153, 159, 179 S.E. 2d 396, 399 (1971),
the Court held that in resolving the questions presented by a mo-
tion for a directed verdict, findings of fact and conclusions of law
"were not required or appropriate and *have no legal significance*."
(Emphasis ours.) Judge Bailey's effort to clarify the issues in his
judgment does not constitute reversible error and will be treated
as mere surplusage.

Finally, defendants assign as error the exclusion of testimony
which they sought to elicit from plaintiff's attorney. The defend-
ants have failed to include in the record what the purport of this
testimony would have been. The exclusion of testimony, if error,
cannot be held to be prejudicial where the record does not show
answers that the witness would have given. *Service Co. v. Sales
Co.*, 259 N.C. 400, 131 S.E. 2d 9 (1963); *Hurst v. West*, 49 N.C.

App. 595, 272 S.E. 2d 378 (1980). Motion for directed verdict in favor of the plaintiff was properly granted.

Affirmed.

Judge CLARK concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

The majority points out that "[d]emand is a necessary prerequisite to *forfeiture* for nonpayment of rent." [Emphasis added.] Indeed, *Reynolds v. Earley*, 241 N.C. 521, 85 S.E. 2d 904 (1955) does require that demand be made before there can be "[a] *forfeiture under G.S. 42-3* for failure to pay rent." *Id.* at 525, 85 S.E. 2d at 907. [Emphasis added.] The evidence in the present case, however, is sufficient to bring into play a contract-vitiating legal doctrine other than "forfeiture under G.S. 42-3." That doctrine is known as rescission by mutual agreement. *See Brannock v. Fletcher*, 271 N.C. 65, 155 S.E. 2d 532 (1967). There is a distinction between rescission and forfeiture. *Brannock v. Fletcher, supra.* An implied agreement to rescind may consist in an abandonment or repudiation of the contract by one of the parties assented or acquiesced in by the other party; but to constitute rescission by mutual consent, both these elements, the abandonment or repudiation and the assent or acquiescence, must be present. *Brannock v. Fletcher, supra.* Further, abandonment may be inferred only from acts and conduct which are clearly inconsistent with the contract. *Brannock v. Fletcher, supra.*

In the present case, there is evidence that plaintiff had not paid rent owing under the lease agreement and that he told defendant that the lease agreement was made for her husband and not for defendant. Such nonpayment of rent would constitute a repudiation and an abandonment by plaintiff of his obligations under the contract. Further, there was evidence that the defendant landlord acquiesced to plaintiff's nonpayment of rent and that defendant believed that plaintiff "just felt like [he] didn't have to pay [rent]." There is, therefore, evidence of each element of mutual rescission, and such evidence would be sufficient to support a verdict that the lease agreement containing the right of

first refusal no longer existed. A directed verdict for the party with the burden of proof is proper only when his evidence so clearly establishes the fact in issue that no reasonable inference to the contrary can be drawn. *North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). The continued existence of the lease agreement is the fact in issue in the present case, and defendant's evidence of mutual rescission was sufficient to permit a reasonable inference of the contract's nonexistence. In my opinion, when all of the evidence is considered together with all of the circumstances surrounding the lease between members of the same family and the death of one of the lessors and the conduct of the lessee and the surviving lessor, there was sufficient evidence to raise an inference that there was a rescission of the lease; and, in my opinion, a directed verdict for the plaintiff was improper.

I vote to reverse.