CHAPEL HILL CINEMAS, INC., A North Carolina Corporation, Plaintiff v.
CECIL W. ROBBINS and FAYE ELOISE ROBBINS, Defendants

No. COA00-253

(Filed 5 June 2001)

### 1. Landlord and Tenant— lease agreement—failure to give notice of sale of property—lost opportunity to purchase property

The trial court erred by granting plaintiff tenant's motion for directed verdict under N.C.G.S. § 1A-1, Rule 50 as to the damages occasioned by the breach of Article XVII of the pertinent lease regarding defendants' failure to give notice to plaintiff of the sale of the property to a third party based on the damages sustained by plaintiff as a result of its lost opportunity to purchase the property, because this issue was a question for the jury since the credibility of the expert's testimony with respect to the methodology used to value the property was at issue.

### 2. Landlord and Tenant— lease agreement—failure to give notice of sale of property—increased rental costs

The trial court did not err by granting plaintiff tenant's motion for directed verdict under N.C.G.S. § 1A-1, Rule 50 as to the damages occasioned by the breach of Article XVII of the pertinent lease regarding defendants' failure to give notice to plaintiff of the sale of the property to a third party based on the damages sustained by plaintiff as a result of its increased rental costs, because: (1) the increased rental costs had no relation to plaintiff's failure to record the lease; and (2) defendants failed to preserve the issues of plaintiff's duty to mitigate damages or that the increased rent should have been submitted to the jury for determination.

### 3. Landlord and Tenant— lease agreement—failure to make repairs

The trial court did not err by granting plaintiff tenant's motion for directed verdict under N.C.G.S. § 1A-1, Rule 50 as to the damages occasioned by the breach of Article V of the pertinent lease regarding defendants' failure to make repairs, because: (1) defendants did not deny the authenticity or correctness of the tenant manager's log of refunds and canceled shows due to the leaking roof; (2) defendants have failed to point to specific areas

of impeachment and contradictions in the manager's testimony; and (3) defendants essentially admitted the existence of the damages ultimately awarded by the trial court for this breach.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendants from an order and judgment entered on 26 July 1999 by Judge F. Fetzer Millsin Orange County Superior Court. Heard in the Court of Appeals 22 February 2001.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Reid L. Phillips and Jennifer T. Harrod, for plaintiff-appellee.*

*Levine & Stewart, by John T. Stewart, and Eisele, Ashburn, Greene & Chapman, P.A., by Douglas G. Eisele, for defendant-appellants.*

MARTIN, Judge.

Plaintiff corporation brought this action alleging claims for breach of a lease and for unfair and deceptive practices. Plaintiff, which operates the Varsity Theater in Chapel Hill, alleged that it entered into a written lease agreement with defendant Cecil W. Robbins and his wife, Eloise S. Robbins, on 24 November 1982, pursuant to which plaintiff leased the Varsity Theater and certain common areas located at the Sorrell Building, 123 East Franklin Street, Chapel Hill, for an initial term of two years, with options for extensions of the lease through 30 September 2002. The lease was not recorded in the office of the Orange County Register of Deeds.

Plaintiffs alleged that defendants breached two provisions of the lease; Article V and Article XVII. Article V provides that the lessors are responsible for "keep[ing] the outer walls, roof and structural portions of the building on the demised premises in proper and substantial repair." Article XVII provides:

[I]n the event the Lessors at any time during the term of this Lease, or any extension thereof, decide voluntarily to sell and convey the said property, the Lessor shall give the Lessee written notice to this effect and the price at which said Lessors have received a bona fide offer for the purchase of said property. Within twenty (20) days after the date of the receipt of said notice the Lessee may give the Lessors written notice that it elects to purchase the said property in which the demised premises are located at said price.

CHAPEL HILL CINEMAS, INC. v. ROBBINS

[143 N.C. App. 571 (2001)]

Plaintiff contends that defendants breached both provisions by failing to repair the roof of the building and by failing to give plaintiff notice of the sale of the property to a third party. Eloise S. Robbins died in 1991, and defendant Faye Eloise Robbins, the granddaughter of Cecil W. Robbins and Eloise S. Robbins, acquired an undivided interest in the property through a deed of gift from Cecil Robbins. She acquired additional interests in the property through gifts from her grandfather and, on 24 September 1997, she became the sole owner of the property. On the same date, Faye Eloise Robbins transferred her entire interest in the Sorrell Building to James M. Rumfelt. Plaintiffs alleged that neither Cecil Robbins nor Faye Eloise Robbins gave them the notice required by Article XVII before selling the building to Rumfelt. Defendants answered admitting the existence of the lease, but denying their breach of its provisions. Plaintiff moved for summary judgment in its favor on all claims. The court granted summary judgment in favor of plaintiff on the issue of defendants' breach of Article XVII, but denied summary judgment on the issue of damages arising from that breach, and also denied plaintiff's motion for summary judgment on the claims for breach of Article V and for unfair and deceptive practices. Those issues were set for trial before a jury.

At trial, plaintiff's evidence tended to show that Jim Steele, the general manager of the Varsity Theater, reported periodic roof leakage to the lessors and received prompt repair until approximately 1991 when Cecil Robbins' health began to decline. Since 1991, however, the leaks increased in frequency and severity. Defendants were slow in responding to requests for repair; and, when made, the repairs were inadequate. Steele estimated, based on a record which he kept, that between December 1996 and March 1997 plaintiff lost $10,800 in refunds and canceled shows due to damage occasioned by the leaking roof.

Plaintiff's evidence further tended to show that Faye Eloise Robbins sold the property to Rumfelt for $550,000 on 24 September 1997, without giving plaintiff any prior notice of the sale. Rumfelt subsequently notified plaintiff of his purchase of the building and that it would be necessary for plaintiff to negotiate a new lease if it desired to continue to occupy the theater. Plaintiff had been paying $3,200 per month as rent under its lease with defendants; after negotiations with Rumfelt, plaintiff signed a new lease on 16 December 1997 that provided for an initial monthly rent of $6,000 and annual increases based on adjustments in the Consumer Price Index. Dr. Hammond

Bennett, a shareholder of plaintiff, testified that plaintiff will pay an additional $159,600 in rent for the remainder of the lease term under the Rumfelt lease.

Steve Williams, a real estate appraiser, testified that he appraised the property as of September 1997 and valued the building at $925,000. He estimated that plaintiff would have paid $555,000 if given the opportunity to exercise its right of first refusal, and concluded therefore that the damages suffered by plaintiff from the lost opportunity to purchase the property was $370,000.

At the close of plaintiff's evidence, it withdrew its claim for unfair and deceptive practices. Defendants presented evidence through the testimony of Faye Eloise Robbins, who testified that the roof was patched and repaired prior to Hurricane Fran in September 1996. After the hurricane, she hired roofing contractors from California to replace the roof but there was a delay in signing the contract. She also testified that defendants had agreed to extend plaintiff's lease beyond 2002, although she had not sent plaintiff a new lease as she had promised. She testified that she sent Dr. Bennett a letter dated 21 September 1997 notifying him of the sale to Rumfelt.

At the close of all the evidence, the trial court granted a directed verdict in favor of plaintiff on both the issue of damages occasioned by defendants' breach of Article XVII and the issue of defendants' breach of Article V and resulting damages. With respect to the latter, the trial court ruled as a matter of law that defendants had breached the lease by failing to keep the roof in proper repair and that the damages from this breach amounted to $10,800. With respect to the damages resulting from defendants' breach of Article XVII, the trial court found that plaintiff was entitled to recover damages in the amount of $529,600 as a matter of law. The trial court entered judgment in favor of plaintiff in the amount of $540,400. Defendants appeal.

Initially, we note that defendants have failed to observe the requirements of Rule 28(b)(5) of the Rules of Appellate Procedure, which requires: "Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." N.C.R. App. P. 28(b)(5). Instead, following each of the questions presented in their brief, defendants have referenced an "Objection No." and an "Exception No." which do not correspond to the seven assignments of error set out in the record on

appeal. The Rules of Appellate Procedure are designed to facilitate appellate review and a failure to observe the rules subjects an appeal to dismissal. *May v. City of Durham*, 136 N.C. App. 578, 525 S.E.2d 223 (2000). Notwithstanding defendants' failure to observe the rules, we elect to exercise the discretion allowed us by N.C.R. App. P. 2 and consider defendants' arguments on their merits.

Defendants have not assigned error to the grant of partial summary judgment establishing their breach of Article XVII nor have they brought forward any assignment of error to the grant of directed verdict establishing their breach of Article V. They argue, however, that the trial court erred by granting plaintiff's motion for directed verdict as to the damages occasioned by those breaches because there were issues of fact for the jury with respect to the amount of those damages.

A motion for a directed verdict pursuant to G.S. § 1A-1, Rule 50 tests the legal sufficiency of the evidence to take the case to the jury. *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971). In ruling upon a motion for a directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, and any conflicts in the evidence and every reasonable inference which may be drawn from it are resolved in favor of the non-movant. *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E.2d 452 (1979). A directed verdict may not be granted when there is conflicting evidence on contested issues of fact. *Cutts v. Casey*, 278 N.C. 390, 180 S.E.2d 297 (1971).

Any party may move for a directed verdict at the close of all the evidence. *Snipes v. Snipes*, 55 N.C. App. 498, 286 S.E.2d 591, *affirmed*, 306 N.C. 373, 293 S.E.2d 187 (1982). But a directed verdict may not be granted in favor of the party with the burden of proof when his right to recover depends on the credibility of his evidence. *Murray v. Murray*, 296 N.C. 405, 250 S.E.2d 276 (1979). Thus, it is rarely appropriate to grant a directed verdict in favor of the party with the burden of proof "because, even though [a] proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by the proponent." *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979) (citations omitted).

In *Burnette*, the Court recognized the following instances where "credibility is manifest as a matter of law:" (1) "[w]here non-movant establishes proponent's case by admitting the truth of the basic facts

upon which the claim of proponent rests;" (2) "[w]here the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents;" and (3) "[w]here there are only latent doubts as to credibility of oral testimony and the opposing party has 'failed to point to specific areas of impeachment and contradictions.' " *Id.* at 537-38, 256 S.E.2d at 396 (citations omitted).

> In summary, while credibility is generally for the jury, courts set the outer limits of it by preliminarily determining whether the jury is at liberty to disbelieve the evidence presented by movant. Needless to say, the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury.

*Id.* at 538, 256 S.E.2d at 396 (citations omitted).

Moreover, we note that although the trial court in this case made findings of fact and conclusions of law, these are neither necessary nor appropriate in granting a motion for directed verdict. *Kelly v. Int'l Harvester Co., supra.* Accordingly, we will disregard the findings and conclusions of the trial court as they have no legal significance. *Id.*

## I.

Defendants argue first that the trial court erred in directing a verdict in plaintiff's favor with respect to damages for their breach of Article XVII of the lease. The trial court awarded damages for the breach of that article in the amount of (1) $370,000, the difference in the fair market value of the building on the date of sale and the price for which defendants sold the building to Rumfelt; and (2) $159,600, the increased rent which plaintiff was required to pay due to Rumfelt's acquiring the property and requiring plaintiff to enter into a new lease.

### A. Damages from Plaintiff's Lost Opportunity to Purchase the Property

[1] Defendants argue that the damages, if any, sustained by plaintiff as a result of its lost opportunity to purchase the property was a question for the jury. We agree.

Steve Williams, who was qualified as an expert real estate appraiser, testified for plaintiff regarding damages suffered as a result of losing the opportunity to purchase the Sorrell Building. Williams

stated that he reached his $925,000 valuation of the property by reconciling two methods, the income approach and the sales comparison approach. The income approach is based on the amount of commercial income the property can generate. Williams testified that he looked at the income under the lease signed with Rumfelt in 1997 and determined that they were "approximately reflective of market rentals." Using this approach, he valued the property at $928,350. The sales comparison approach looks at recent sales of similar property. Williams testified that he looked at sales of comparable buildings on or in the vicinity of Franklin Street and valued the property at $918,540. Plaintiff contends that Williams' credibility is manifest as a matter of law; therefore, it contends, the trial court properly directed a verdict for plaintiff.

However, Williams was cross-examined as to his methodology as follows:

Q. Mr. Williams, in your testimony, uh, of course you're doing this appraisal now based on numbers that you gathered from various places to try to come up with a value from September of '97; is that correct?

A. That's correct.

Q. Okay. And in [sic] one of your approaches that you just explained is the income approach. And you use the income after Mr. Rumfelt purchased the property and renegotiated all the leases; is that correct?

A. That's correct, yes.

Q. To come up with the value at a possible sale in September, you wouldn't have had those numbers if you'd done that the first day of September; isn't that correct?

A. That's correct.

Q. Why didn't you use the, uh, rental income that was there September 1, instead of now looking back after Rumfelt had redone all the leases to come up with a value of the property.

A. The income in September 1997, uh, would have reflected a lease fee estate. Uh, I was asked to look at the value of the fee simple. I don't want to complicate the issue, but the fee simple value of the property looks at market rates, the rates that an

owner could achieve if the property is leased on the market at that time.

Q. Okay. But you said you'd used the leases that Rumfelt did for '97?

A. Yes.

Q. Okay. If you had used the leases in existence September 1, would that have been different?

A. Yes. That would have been a leased fee estate as of September 1, 1997 as encumbered by the leases in place. The fact that the leases were not recorded, uh, indicated that a buyer of the property was not necessarily bound by the contract rents passing at that time.

The foregoing cross-examination arguably brought into question a specific area of Williams' testimony with respect to the methodology used to value the property and therefore arguably brought this evidence into question. Viewing the evidence in the light most favorable to the defendants and giving them the benefit of every reasonable inference which may be drawn from it, as is required in ruling on a motion for directed verdict, we must conclude that the credibility of Williams' testimony adduced by plaintiff was at issue and the court erred in granting a directed verdict awarding plaintiff damages based thereon. As the Court noted in *Burnette*, "the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury." 297 N.C. at 538, 256 S.E.2d at 396. In this instance, the court erred by not exercising such restraint; the issue was for the jury to determine.

## B. Damages from Plaintiff's Increased Rental Cost

[2] Defendants also argue that the trial court erred in directing a verdict for plaintiff and awarding damages for plaintiff's increased rental costs. They contend their breach of the notification of sale and right of first refusal provisions of Article XVII was not a proximate cause of plaintiff's damages because, had plaintiff recorded the lease, Rumfelt would have been bound by the original lease terms and plaintiff's rent would not have increased. Therefore, defendants argue that the court should not have awarded plaintiff damages for its increased rental cost.

Plaintiff's failure to record the lease has no effect on the legal relationship between it, as lessor, and defendants, as lessees. In

*Patterson v. Bryant,* 216 N.C. 550, 5 S.E.2d 849 (1939), our Supreme Court held that the recordation statutes are for the protection of subsequent purchasers, not for the protection of the parties to the contract. In *Patterson,* the defendant-grantor conveyed two timber deeds on the same piece of land. *Id.* at 551, 5 S.E.2d at 849-50. The plaintiff was the first grantee; however, the subsequent grantee was the first to record his deed. *Id.* The plaintiff sued the defendant for breach of the agreement. *Id.* The defendant argued that the plaintiff was negligent or guilty of laches in failing to record the deed and that any damages were a result of this failure. *Id.* at 552, 5 S.E.2d at 850. The Court disagreed:

> Whether it is registered at all is of no consequence to the grantor, and the statute requiring conveyances to be registered is not for his protection, but, as stated, for protection of a subsequent purchaser with whom he has seen fit to deal; therefore, laches on the part of his first grantee in recording his deed is not available to defendant [grantor] as an equitable defense.

*Id.* at 553, 5 S.E.2d at 851. Here, defendants are making essentially the same argument as the defendant in *Patterson,* and for similar reasons, we reject it.

In their brief, defendants present three additional grounds for their argument that plaintiff was not entitled to damages for the increased rental cost. One of these grounds, the duty to mitigate damages, is the basis for the dissent in this case. However, defendants have failed to preserve these arguments for appellate review. Initially, we note that none of these three additional grounds was presented to the trial court for a ruling. *See State v. Hensley,* 77 N.C. App. 192, 334 S.E.2d 783 (1985), *disc. review denied,* 315 N.C. 393, 338 S.E.2d 882 (1986); N.C.R. App. P. 10(b). While a liberal construction of the pleadings might support a conclusion that they raised an issue as to mitigation of damages, defendants presented *no* evidence to require submission of the issue to the jury. Indeed, defendants did not even cross-examine Dr. Bennett, plaintiff's witness who testified regarding the difference in rental cost, with respect to plaintiff's alleged failure to mitigate damages.

In addition, defendants did not assert plaintiff's breach of its duty to mitigate as a ground in opposition to plaintiff's motion for directed verdict. In opposing the motion for directed verdict, defendants argued "if plaintiff wanted to be protected under the lease, he (sic) should have had that lease recorded." An appellate court will not con-

sider arguments other than those called to the attention of the trial court in reviewing the trial court's ruling on a motion for directed verdict. *Stacy v. Jedco Construction Co.*, 119 N.C. App. 115, 457 S.E.2d 875, *disc. review denied*, 341 N.C. 421, 461 S.E.2d 761 (1995) (reviewing order denying motion for directed verdict). "[T]he law does not permit parties to swap horses between courts in order to get a better mount" on appeal. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934).

Finally, N.C.R. App. P. 10(c) requires that each assignment of error "state plainly, concisely, and without argumentation the legal basis upon which error is assigned." Nowhere in the assignments of error, including those cited by the dissent, does plaintiff's alleged failure to mitigate damages appear as a legal basis for error. Thus, we hold defendants have failed to properly present the issue of plaintiff's duty to mitigate its damages for appellate review.

Alternatively, defendants argue that the amount of damages to which plaintiff was entitled for increased rent should have been submitted to the jury for determination. As to this element of damages, plaintiff presented evidence that the rent under the lease with defendants at the time the property was sold was $3,200 per month, and that the new lease required by Rumfelt after his purchase of the property called for monthly rent in the amount of $6,000. Dr. Bennett testified that plaintiff's lease with defendants had fifty-seven months remaining on its term at the time of Rumfelt's purchase of the property, and that plaintiff would be required to pay $159,600 in increased rent during that term. Neither defendants' evidence, nor their cross-examination of plaintiff's witnesses, served to impeach the authenticity or correctness of the documents offered by plaintiff or the credibility of plaintiff's evidence as to the amount of increased rent occasioned by defendants' breach of Article XVII. Thus, pursuant to *Burnette*, the credibility of plaintiff's evidence as to this element of damages was manifest and the trial court did not err in directing the verdict in plaintiff's favor.

II.

[3] Defendants also contend the trial court erred in granting a directed verdict establishing the damages to which plaintiff was entitled by reason of defendants' failure to make repairs in breach of Article V. They contend the amount of such damages was an issue for the jury. We disagree.

CHAPEL HILL CINEMAS, INC. v. ROBBINS

[143 N.C. App. 571 (2001)]

Plaintiff's manager, Mr. Steele, testified, based on a log which he kept during the pertinent time period, that plaintiff lost $10,800 as a result of refunds and canceled shows due to the leaking roof. Defendants made no attempt to discredit or refute his testimony. In fact, while arguing in opposition to plaintiff's motion for directed verdict, defendant's counsel acknowledged those damages:

And . . . the only possible damages I can see are the $10,800 for roof leaks which didn't seem to get fixed in a timely manner.

All three of the instances recognized by the *Burnette* Court where credibility is manifest as a matter of law are present in this case. Defendants did not deny the authenticity or correctness of Mr. Steele's log; they have failed to point to specific areas of impeachment and contradictions in his testimony; and defendants, through the statement of their counsel, essentially admitted the existence of the damages ultimately awarded by the trial court for this breach. Accordingly, we hold that the credibility of plaintiff's evidence as to such damages is manifest as a matter of law and the court did not err in directing the verdict as to damages from this breach.

For the foregoing reasons, we find no error in the trial court's granting of a directed verdict in favor of plaintiff establishing plaintiff's damages at $10,800 for defendants' breach of Article V of the lease, and establishing damages for increased rent in the amount of $159,600 as a portion of plaintiff's damages for defendants' breach of Article XVII of the lease. However, because a factual issue existed for the jury with respect to the amount of the damages sustained by plaintiff due to its having lost the opportunity to purchase the building as a proximate result of defendants' breach of Article XVII, the directed verdict fixing such amount was error, and defendants are entitled to a new trial on the issue. The case must be remanded for such a trial and the entry of judgment reflecting the jury's finding.

No error in part; new trial in part.

Judge TIMMONS-GOODSON concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion that the trial court properly granted directed verdict in favor of plaintiff for $10,800.00 for defend-

ants' breach of Article V of the lease. I also concur with the majority's opinion that the trial court erred in granting a directed verdict in favor of plaintiff in the amount of $370,000.00 for plaintiff's lost opportunity to purchase the building. However, I respectfully dissent from the majority's opinion that the trial court properly granted a directed verdict in favor of plaintiff for $159,600.00 in damages for increased rents. I would hold that the jury was entitled to determine whether plaintiff exercised reasonable diligence to mitigate its damages for increased rental payments.

"With respect to the question of mitigation of damages, the law in North Carolina is that the nonbreaching party to a lease contract has a duty to mitigate his damages upon breach of such contract." *Isbey v. Crews*, 55 N.C. App. 47, 51, 284 S.E.2d 534, 537 (1981) (citing *Weinstein v. Griffin*, 241 N.C. 161, 84 S.E.2d 549 (1954); *see also, e.g., Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 121, 123 S.E.2d 590, 598 (1962) (quotation omitted) (" 'A party injured by the breach of contract by the other party thereto is required to protect himself from loss if he can do so with reasonable exertion or trifling expense, and ordinarily will be allowed to recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.' "); *Monger v. Lutterloh*, 195 N.C. 274, 142 S.E. 12, 16 (1928) (quotation omitted) (" 'The general principle is fully recognized with us that, in case of contract broken or tort committed, the injured party should do what reasonable care and business prudence requires to minimize the loss.' ").

"Imposing such a duty assures that an award of damages will put the injured party in as good a position as if the contract had not been breached while affording the least amount of cost to the defaulting party." *New Towne Limited Partnership v. Pier 1 Imports, Inc.*, 113 Ohio App.3d 104, 108, 680 N.E.2d 644, 646 (1996).

"Since it is a basic principle of contract law that damages are compensatory and not punitive, North Carolina holds that the nonbreaching party to a lease cannot recover damages which he could have averted by reasonable mitigation activity." 2 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 12-28, at 524 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 5th ed. 1999). Where the nonbreaching party to a contract fails to use reasonable diligence to mitigate damages, its recovery will be limited to "the difference between what [it] would have received had the lease agreement been performed, and the fair market value of what he could

have received had [it] used reasonable diligence to mitigate." *Isbey* at 51, 284 S.E.2d at 537.

"Generally, the reasonableness of mitigation efforts depends upon the facts and circumstances of the particular case and is a jury question except in the clearest of cases." *Smith v. Martin*, 124 N.C. App. 592, 600, 478 S.E.2d 228, 233 (1996) (citing *Radford v. Norris*, 63 N.C. App. 501, 503, 305 S.E.2d 64, 65 (1983)) (emphasis supplied).

The evidence presented at trial established that, prior to the sale of the building to Rumfelt, plaintiff's rent was $3,200.00 per month. After purchasing the building, Rumfelt wrote a letter to plaintiff's stockholders advising them of his purchase, stating "[i]f you are interested in negotiating a new lease, I look forward to developing a business relationship that will be beneficial to all of us." Upon receiving the letter, plaintiff offered to buy the building from Rumfelt, who refused. The parties entered into a new lease requiring rental payments of $6,000.00 per month, nearly double the original monthly rental amount.

I would hold plaintiff's evidence as to this element of damages was not manifest, and that the jury was entitled to determine whether plaintiff exercised the reasonable diligence required by law to mitigate its damages resulting from defendants' breach. The only "manifest" evidence was that plaintiff agreed to a virtual doubling of its rent less than 3 months after defendants' sale of the property to Rumfelt. The trial court's grant of a directed verdict on this issue was error. Accordingly, I respectfully dissent from this portion of the majority's opinion.

I also disagree with the majority's opinion that the issue of plaintiff's mitigation of its increased rental damages is not an issue properly before this Court. In its complaint, plaintiff alleged that Rumfelt informed plaintiff that he had purchased the building, and that Rumfelt stated that "unless Plaintiff signed a new lease with him at a higher rental, he would pursue negotiations with other prospective tenants for the premises leased by Plaintiff." Plaintiff did not separate its allegations of damages incurred for lost opportunity and for increased rentals in its complaint. Plaintiff merely alleged that it suffered damages as a result of defendants' breach of the lease. Defendants' answer denied both that Rumfelt required plaintiff to pay higher rent in order to stay in the building, and that plaintiff suffered damages, including increased rental damages, as a result of defendants' breach.

Contrary to the majority's colorful assertion that the "law does not permit parties to swap horses between courts in order to get a better mount" on appeal, the record as a whole reflects that defendants continue to ride the same horses they mounted when they filed their answer. Plaintiff did not segregate its claims for damages for lost opportunity and damages for increased rentals. Defendants' denial of those allegations squarely put those claims in dispute, including the question of fact of whether plaintiff did "what reasonable care and business prudence requires to minimize the loss." *Monger, supra.*

A plaintiff's duty to mitigate damages following a defendant's breach is a duty that arises as a matter of law. *See, e.g., Tillis v. Calvine Cotton Mills, Inc.,* 251 N.C. 359, 367-68, 111 S.E.2d 606, 613 (1959) (citation omitted) (a party is "required by law to exercise reasonable diligence to minimize damages."); *Gibbs v. Western Union Telegraph Co.,* 196 N.C. 516, 146 S.E. 209, 213 (1929) (citations omitted) ("it is a well-settled rule of law that the party who is wronged is required to use due care to minimize the loss."). The duty to mitigate "stems from the implied covenant of good faith and fair dealing" inherent in all contracts. *See New Towne Limited Partnership,* 113 Ohio App.3d at 108, 680 N.E.2d at 646; Barker, <u>Commercial Landlords' Duty Upon Tenants' Abandonment—To Mitigate</u>?, 20 J. Corp. L. 627, 644 (1995). *See also, Rubin v. Dondysh,* 146 Misc.2d 37, 43, 549 N.Y.S.2d 579, 582 (1989), *reversed on other grounds,* 153 Misc.2d 657, 588 N.Y.S.2d 504 (1991) (duty to mitigate "flows logically from the implied covenant, which exists in any contract, of fair dealing and good faith.").

Thus, where plaintiff raised the issue of defendants' liability for plaintiff's increased rental damages following defendants' breach, the issue of plaintiff's duty to mitigate such damages arose as a matter of law. The issue was properly presented to the trial court, and the jury was entitled to review it.

Furthermore, defendants preserved this argument for appeal in their assignments of error to this Court. Defendants' assignments of error, as enumerated in the record on appeal, include the following: (1) that the trial court's entry of a directed verdict was inappropriate where, "it appearing from the evidence adduced at trial that there existed an issue of fact as to the amount of damages, if any, which Plaintiff was entitled to recover"; (2) that the trial court's conclusion that plaintiff was entitled to recover damages for increased rents was

inappropriate where plaintiff had no obligation to pay the increased rent; and (3) that the trial court's conclusion that defendants were liable for $159,600.00 in increased rental damages was error where plaintiff's failure to record its lease "was the proximate cause of Plaintiff's inability to avoid paying a higher lease cost, and that in any event Plaintiff was under no obligation to accept a higher lease cost."

Defendants also argued in their brief that plaintiff's duty to mitigate its damages was an issue requiring the jury's review. Defendants' arguments were supported by authority. I would hold that because the trial court made no findings of fact or conclusions of law that plaintiff made any efforts to mitigate its damages, the entry of a directed verdict in favor of plaintiff was error on this question of fact.

I concur with the majority's opinion that the trial court erred in granting a directed verdict for plaintiff for lost opportunity damages in the amount of $370,000.00. The jury did not pass judgment on whether defendants must be accountable for the entire amount of increased rental damages. Evidence of damages for plaintiff's lost opportunity were based upon Williams' testimony of the value of the building. Williams' valuation of the property was based, in part, upon the increased rental amounts that were agreed to after the date of sale. I concur with the majority's opinion that the credibility of this evidence was not so manifest for the trial court to remove this issue from the jury and grant a directed verdict.

Plaintiff did not separate the allegations of damages for lost opportunity and for increased rentals for breach of Article XVII of the lease in the complaint. The issues of plaintiff's damages for increased rentals and for lost opportunity are intertwined. It is difficult to separate these elements of damages, where the evidence is manifest in one area of damages, but not manifest in the other. We all agree that lost opportunity damages must be considered by the jury. I believe the issue of damages for increased rentals and plaintiff's mitigation efforts should also be submitted to the jury.