PATRICIA JOHNSON, ESTATE OF DORIS LARYEA, AND THE ESTATE OF LOVIE H. JONES and GERALDINE COLLIER, Plaintiff,
v.
LYNWOOD LUCAS and JOE PEACOCK, T/A TRIANGLE TIMBER SERVICES, Defendants.
No. COA07-1084
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Hunter, Higgins, Miles, Elam & Benjamin, PLLC, by Robert N. Hunter, Jr., for plaintiffs-appellees.
Law Offices of George Ligon, Jr., by George Ligon Jr., for defendant-appellant Lucas.
WYNN, Judge.
"When an entry of default is made and the allegations of the complaint are sufficient to state a claim, the defendant has no further standing to contest the merits of plaintiff's right to recover."[1] In this case, Defendant Lynwood Lucas argues that the trial court erred by failing to direct verdict in his favor on the issue of conversion. Because default was entered against Lynwood Lucas and Plaintiffs' complaint sufficiently asserted a claim for conversion, he cannot defend on the merits of the case; accordingly, we affirm.
The facts of this matter tend to show that James Lucas died in 1969, leaving a will that granted his wife, Lovie Jones, a life estate in all his real property, with the remainder in equal shares to his five children, Patricia Johnson, Doris Laryea, Geraldine Collier, Lynwood Lucas, and William Lucas. James Lucas's real property included a house in which Ms. Jones resided and approximately eighteen acres of farmland with timber on it.
In 1995, Joe Peacock, who was in the timber cutting business, was looking at timber on a tract of land neighboring the Lucas property and noticed that the Lucas' timber had beetle damage. Mr. Peacock asked Lynwood Lucas if he would sell the timber because of the infestation and Lynwood Lucas told Mr. Peacock that he would have to ask his family members. Lynwood Lucas subsequently told Mr. Peacock that his family had met and agreed to have the timber cut. On 2 November 1995, Lynwood Lucas and his mother, Ms. Jones, signed a timber deed for Mr. Peacock to harvest the timber on the Lucas property.
It took approximately five weeks for the timber to be cut. Mr. Peacock paid Lynwood Lucas a total of $32,413.20 for the timber, in a series of checks which Lynwood Lucas endorsed.
On 7 May 1997, Patricia Johnson, Doris Laryea, and Geraldine Collier (collectively "Plaintiffs") filed this action against Mr. Peacock and Lynwood Lucas, asserting claims of fraud and misrepresentation, conversion, trespass, conspiracy, unlawful cutting of timber, and punitive damages. On 27 June 1997, the clerk of court made an entry of default against Lynwood Lucas pursuant to Rule 55(a) of the North Carolina Rules of Civil Procedure for his failure to answer the complaint. See N.C. Gen. Stat. § 1A-1, Rule 55(a) (2007). On 5 May 2003, Lynwood Lucas filed a motion to set aside the entry of default; however, the record does not contain a ruling on this motion. Mr. Peacock filed a timely answer to Plaintiffs' complaint and asserted cross-claims against Lynwood Lucas for indemnity and breach of warranty.
After a bench trial before Judge J.B. Allen, Jr., the trial court entered a judgment on 12 July 2001, finding as fact that "[t]he plaintiffs have been damaged by the cutting of timber from the Subject Premises, and they are entitled to recover of the defendants an amount of at least Seventy-seven Thousand Dollars (77,000.00)." The trial court also found that "Peacock has been damaged" and therefore was entitled to recover of Lynwood Lucas the amount of $77,000. The court then entered judgment in favor of Mr. Peacock and against Lynwood Lucas in the amount of $77,000.
On 10 March 2003, Lynwood Lucas filed a motion for relief from the 12 July 2001 judgment, arguing that Mr. Peacock never served him with a summons and cross-claim as required by Rules 4 and 5 of the North Carolina Rules of Civil Procedure. Based upon Lynwood Lucas's motion for relief from judgment, on 25 July 2006, the trial court filed an order for relief of judgment, vacating the 12 July 2001 judgment "in the amount of $77,000 . . . for co-defendant JoePeacock against defendant, Lynwood Lucas" because the court did not have personal jurisdiction over Lynwood Lucas to enter judgment on the cross-claims.
On 10 April 2003, Plaintiffs filed a motion for partial summary judgment for their claims of unlawful cutting of timber against Mr. Peacock and Lynwood Lucas. On 9 June 2003, the trial court granted partial summary judgment in favor of Plaintiffs and ordered Mr. Peacock and Lynwood Lucas to pay $77,000 plus costs jointly and severally.[2] In granting partial summary judgment for Plaintiffs, Judge Howard E. Manning Jr. cited Judge Allen's finding of fact from the 12 July 2001 judgment that "Plaintiffs have been damaged by the cutting of timber from the subject property and are entitled to recover of both defendants the amount of . . . $77.000.00," as "law in the case."
Both Mr. Peacock and Lynwood Lucas filed a motion for relief from the 9 June 2003 judgment in favor of Plaintiffs for $77,000. After a hearing before Judge Manning, on 6 March 2007, the court filed an order granting relief from judgment. The court found as fact:
Based upon the parties [sic] mutual mistake of fact that personal jurisdiction had been obtained . . . [over] Defendant Lucas, the court finds that the Plaintiffs and Defendant Peacock's contention in the prior motion for summary judgment in this court that the amount of damages contained in Judge Allen's prior order was an "adjudicated fact" and this court's adopting of that contention would be inequitable. . . .
The court thereby vacated its 9 June 2003 judgment as to damages, but concluded that "[t]his order does not modify previous orders or judgments of the Court as to the question of the defendants' liability." The court then ordered a trial on the issue of damages.
At the jury trial on the issue of damages, Lynwood Lucas and Mr. Peacock moved for a directed verdict at the close of Plaintiffs' evidence on all six of Plaintiffs' claims. The trial court granted a directed verdict for Lynwood Lucas and Mr. Peacock on the claims of fraud and misrepresentation, trespass, civil conspiracy, and punitive damages, but denied a directed verdict on the claims of conversion and unlawful cutting of timber. At the close of all the evidence, Plaintiffs, Lynwood Lucas, and Mr. Peacock all moved for a directed verdict. On 12 April 2007, the trial court filed a Judgment and Order Directing Verdict. The trial court made the following findings of fact:
9. [O]n July 2, 2001, a judgment was entered by Honorable J.B. Allen, in favor of the Plaintiffs against both defendants and the defendant Peacock against the defendant Lucas. This judgment was subsequently modified so as to vacate the judgment of the Defendant Peacock against the Defendant Lucas, but otherwise remains unchanged.
10. Based upon this modification, this court set a trial on the issue of damages. . . .
11. The court finds that the Plaintiffs have been damaged by the Defendant Lucas in the amount of $24,129.61 plus interest at the legal rate of interest from November 2, 1996 until paid[.]
The court then granted a directed verdict for Plaintiffs against Lynwood Lucas on the grounds of conversion and ordered Lynwood Lucas to pay Plaintiffs $24,129.61 plus interest. The court also granted a directed verdict for Mr. Peacock against Plaintiffs and dismissed with prejudice all other claims and cross-claims.
Lynwood Lucas now appeals from the 12 April 2007 Judgment and Order, arguing the trial court erred by: (I) failing to grant a directed verdict or dismissal for him on the issue of conversion when Plaintiffs' complaint did not state a cause of action for conversion and Plaintiffs failed to prove conversion, and (II) granting a directed verdict for Plaintiffs.

I.
Lynwood Lucas first argues the trial court erred by failing to grant a directed verdict or dismissal for him on the issue of conversion because Plaintiffs' complaint did not state a cause of action for conversion and Plaintiffs failed to prove conversion. We disagree.
Under our Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead . . . and that fact is made to appear by affidavit, motion of attorney for the plaintiff, or otherwise, the clerk shall enter his default." N.C. Gen. Stat. § 1A-1, Rule 55(a) (2007).
When an entry of default is made and the allegations of the complaint are sufficient to state a claim, the defendant has no further standing to contest the merits of plaintiff's right to recover. His only recourse is to show good cause for setting aside the default and, failing that, to contest the amount of the recovery. The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint, and is prohibited from defending on the merits of the case.
Hartwell v. Mahan, 153 N.C. App. 788, 790-91, 571 S.E.2d 252, 253-54 (2002) (quotations and citations omitted), disc. review denied, 356 N.C. 671, 577 S.E.2d 118 (2003); see also N.C. Gen. Stat. § 1A-1, Rule 8(d) (2007) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").
Here, on 27 June 1997, the clerk of court made an entry of default against Lynwood Lucas for his failure to respond to Plaintiffs' complaint. In their complaint, Plaintiffs made a claim for conversion and alleged that "[a]s remaindermen and the life tenant . . . Plaintiffs have a proprietary and possessory interest in the timber on said property," and "Defendant Lucas sold the timber to Defendant Peacock and kept the proceeds, except for a small amount paid to Plaintiff Jones, thereby converting the property of the Plaintiffs and damaging the Plaintiffs." Because an entry of default was made against Lynwood Lucas and Plaintiffs' complaint sufficiently alleged a cause of action for conversion, Lynwood Lucas is deemed to have admitted the allegations in Plaintiffs' complaint and is prohibited from defending on the merits of the case. See Hartwell, 153 N.C. App. at 790-91, 571 S.E.2d at 253-54. Accordingly, we uphold the trial court's denial of a directed verdict for Lynwood Lucas on the issue of conversion.

II.
Lynwood Lucas next argues the trial court erred by granting a directed verdict for Plaintiffs against him since they failed to meet their burden of proof on the issues of conversion and damages. Because we have already concluded that Lynwood Lucas is deemed to have admitted the allegations in Plaintiffs' complaint, we will not address whether Plaintiffs met their burden of proof for conversion. Regarding whether Plaintiffs met their burden on the issue of damages, we uphold the trial court's grant of directed verdict for Plaintiffs.
A motion for a directed verdict pursuant to Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury. Kelly v. Int'l Harvester Co., 278 N.C. 153, 157, 179 S.E.2d 396, 398 (1971). In ruling upon a motion for directed verdict,
the court must consider the evidence in the light most favorable to the nonmoving party, and any conflicts in the evidence and every reasonable inference which may be drawn from it are resolved in favor of the non-movant. A directed verdict may not be granted when there is conflicting evidence on contested issues of fact.
Chapel Hill Cinemas, Inc. v. Robbins, 143 N.C. App. 571, 575, 547 S.E.2d 462, 466 (citation omitted), rev'd on other grounds, 354 N.C. 349, 554 S.E.2d 644 (2001).
Here, at the trial on the issue of damages, the trial court found that Plaintiffs were damaged by Lynwood Lucas in the amount of $24,129.61 plus interest. In determining the amount of damages, the trial court relied on Plaintiffs' calculations using applicable tax rates.[3] The evidence presented at the trial showed that Mr. Peacock paid Lynwood Lucas $32,413.20 for the timber, and none of the parties disputed that amount. Plaintiffs calculated that Ms. Jones's share of the proceeds from the timber cutting would have been $11,704.24, leaving $ 20,708.96 to be shared equally among the five children, or $ 4,141.79 each. The trial court stated that "the amount of life estate is calculable by us, and the amount of the three-fifths of whatever they're entitled to is calculable by us. So I really don't even think I'm going to send the . . . issue to the jury." Because there was no conflicting evidence regarding the amount of damages and the trial court was able to calculate the damages owed to Plaintiffs, we affirm the trial court's decision.
Affirmed.
Judges McGEE and STROUD concur.
Report per Rule 30(e).
NOTES
[1] Hartwell v. Mahan, 153 N.C. App. 788, 790-91, 571 S.E.2d 252, 253-54 (2002) (quotation omitted), disc. review denied, 356 N.C. 671, 577 S.E.2d 118 (2003).
[2] This matter was appealed and dismissed by this Court as interlocutory. Johnson v. Lucas, 168 N.C. App. 515, 608 S.E.2d 336, aff'd, 360 N.C. 53, 619 S.E.2d 502 (2005).
[3] The trial court took judicial notice of the tax rates.